**M. Russell TURLEY and Robert H. Stievater, Plaintiffs,**

v.

**Louis J. LEFKOWITZ et al., Defendants.**
Civ. 1971–80.

United States District Court,
W. D. New York.
May 1, 1972.

Robinson & Speller, Buffalo, N. Y. (Richard O. Robinson, Buffalo, N. Y., of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, Albany, N. Y. (Douglas S. Dales, Jr., Asst. Atty. Gen., of counsel), for defendants Lefkowitz and Rockefeller.

James L. Magavern, Erie County Atty., Buffalo, N. Y. (Justyn E. Miller, Asst. County Atty., of counsel), for defendant Tutuska.

Before FEINBERG, Circuit Judge, and HENDERSON and CURTIN, District Judges.

CURTIN, District Judge:

The plaintiffs in this action are licensed architects who have in the past been employed by various municipalities and state and county agencies in New York. In February, 1971 they were called to testify before the holdover January, 1971 Erie County Grand Jury. At that time both were requested to sign waivers of immunity, and each declined while asserting his Fifth Amendment privilege against self-incrimination. Thereafter, in February, 1971, the Erie County District Attorney sent the following letter to the County Executive, County Attorney, County Legislature, State Attorney General, State Commissioner of Transportation, and the plaintiffs' architectural firm:

> Please be advised that the following persons were subpoenaed to appear before the January, 1971 Hold-over Erie County Grand Jury to testify with regard to an investigation concerning transactions and contracts that they had with the County of Erie, a politi-

cal subdivision of the State of New York:

J. Lloyd Walker

M. Russell Turley

Robert H. Stievater

Pursuant to said subpoenas they were individually asked to sign a Waiver of Immunity against subsequent criminal prosecution and each refused. Mr. Walker was nonetheless called before the Grand Jury and has testified with immunity. Mr. Turley and Mr. Stievater, upon their respective refusals to sign such a waiver, were excused and have not been called before the Grand Jury.

Your attention is called to Article 5–A pertaining to Public contracts as recited in the General Municipal Law, and more specifically, Sections 103–A and 103–B, pertaining to cancellations of existing contracts and disqualifications of future contracts and awards with any political subdivision of the State of New York.

\* \* \* \* \* \*

Claiming that the defendants now threaten to nullify the plaintiffs' employment opportunities and contractual rights, plaintiffs pray for a judgment declaring Sections 103–a[1] and 103–b[2] of

---

1. Section 103–a provides:

A clause shall be inserted in all specifications or contracts made or awarded by a municipal corporation or any public department, agency or official thereof on or after the first day of July, nineteen hundred fifty-nine or by a fire district or any agency or official thereof on or after the first day of September, nineteen hundred sixty, for work or services performed or to be performed, or goods sold or to be sold, to provide that upon the refusal of a person, when called before a grand jury, head of a state department, temporary state commission or other state agency, the organized crime task force in the department of law, head of a city department, or other city agency, which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation concerning any transaction or contract had with the state, any political subdivision thereof, a public authority or with any public department, agency or official of the state or of any political subdivision thereof or of a public authority, to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such transaction or contract,

(a) such person, and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any municipal corporation or fire district, or any public department, agency or official thereof, for goods, work or services, for a period of five years after such refusal, and to provide also that

(b) any and all contracts made with any municipal corporation or any public department, agency or official thereof on or after the first day of July, nineteen hundred fifty-nine or with any fire district or any agency or official thereof on or after the first day of September, nineteen hundred sixty, by such person, and by any firm, partnership, or corporation of which he is a member, partner, director or officer may be cancelled or terminated by the municipal corporation or fire district without incurring any penalty or damages on account of such cancellation or termination, but any monies owing by the municipal corporation or fire district for goods delivered or work done prior to the cancellation or termination shall be paid.

The provisions of this section as in force and effect prior to the first day of September, nineteen hundred sixty, shall apply to specifications or contracts made or awarded by a municipal corporation on or after the first day of July, nineteen hundred fifty-nine, but prior to the first day of September, nineteen hundred sixty.

2. Section 103–b provides:

Any person who, when called before a grand jury, head of a state department, temporary state commission or other state agency, the organized crime task force in the department of law, head of a city department or other city agency, which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation concerning any transaction or contract had with the state, any political subdivision thereof, a public authority, or with a public department, agency or official of the state or of any political subdivision thereof or of a public authority, refuses to sign a waiver of immunity against subsequent criminal prosecution or to answer and

the New York General Municipal Law and Sections 2601[3] and 2602[4] of the New York Public Authorities Law violative of plaintiffs' Fifth Amendment rights.

any relevant question concerning such transaction or contract, and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any municipal corporation or fire district, or with any public department, agency or official thereof, for goods, work or services, for a period of five years after such refusal or until a disqualification shall be removed pursuant to the provisions of section one hundred three–c of this article.

It shall be the duty of the officer conducting the investigation before the grand jury, the head of a state department, the chairman of the temporary state commission or other state agency, the organized crime task force in the department of law, the head of a city department or other city agency before which the refusal occurs to send notice of such refusal, together with the names of any firm, partnership or corporation of which the person so refusing is known to be a member, partner, officer or director, to the commissioner of transportation of the state of New York and the appropriate departments, agencies and officials of the state, political subdivsions thereof or public authorities with whom the persons so refusing and any firm, partnership or corporation of which he is a member, partner, director or officer, is known to have a contract. However, when such refusal occurs before a body other than a grand jury, notice of refusal shall not be sent for a period of ten days after such refusal occurs. Prior to the expiration of this ten day period, any person, firm, partnership or corporation which has become liable to the cancellation or termination of a contract or disqualification to contract on account of such refusal may commence a special proceeding at a special term of the supreme court, held within the judicial district in which the refusal occurred, for an order determining whether the questions in response to which the refusal occurred were relevant and material to the inquiry. Upon the commencement of such proceeding, the sending of such notice of refusal to answer shall be subject to order of the court in which the proceeding was brought in a manner and on such terms as the court may deem just. If a proceeding is not brought within ten days, notice of refusal shall thereupon be sent as provided herein.

3. Section 2601 provides:

A clause shall be inserted in all specifications or contracts hereafter made or awarded by any public authority or by any official of any public authority created by the state or any political subdivision, for work or services performed or to be performed or goods sold or to be sold, to provide that upon the refusal by a person, when called before a grand jury, head of a state department, temporary state commission or other state agency, the organized crime task force in the department of law, head of a city department, or other city agency, which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation concerning any transaction or contract had with the state, any political subdivision thereof, a public authority or with any public department, agency or official of the state or of any political subdivision thereof or of a public authority, to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such transaction or contract,

(a) such person, and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any public authority or official thereof, for goods, work or services, for a period of five years after such refusal, and to provide also that

(b) any and all contracts made with any public authority or official thereof, since the effective date of this law, by such person and by any firm, partnership or corporation of which he is a member, partner, director or officer may be cancelled or terminated by the public authority without incurring any penalty or damages on account of such cancellation or termination, but any monies owing by the public authority for goods delivered or work done prior to the cancellation or termination shall be paid.

4. Section 2602 provides:

Any person, who, when called before a grand jury, head of a state department, temporary state commission or other state agency, the organized crime task force in the department of law, head of a city department, or other city agency, which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation concerning any transaction or contract had with the state,

Since they further seek a permanent injunction against the operation of the above statutes, a three judge panel was convened to hear argument.

Each of the sections which plaintiffs attack was added to the laws of New York in 1959. Their background is recited in detail in United States ex rel. Laino v. Warden of Wallkill Prison, 246 F.Supp. 72, 92–99 (S.D.N.Y.1965), aff'd per curiam, 355 F.2d 208 (2d Cir. 1966), wherein an attack on the constitutionality of Section 103–b was unsuccessful. Aside from minor variations in language, the statutes are essentially identical. Generally, they provide that in all contracts awarded by a municipality or public authority of the state for work or services, a clause must be inserted to provide that, upon refusal of a person to testify before a grand jury, to answer any relevant question, or to waive immunity against subsequent criminal prosecution, such person and any firm of

which he is a member shall be disqualified for five years from contracting with any municipality or public authority, and any existing contracts may be cancelled by the municipality or public authority without incurring penalty.

The narrow issue before the court is whether plaintiffs' "testimony was demanded before the grand jury in part so that it might be used to prosecute [them], and not solely for the purpose of securing an accounting of [their] performance of [their] public trust." See Gardner v. Broderick, 392 U.S. 273, at 279, 88 S.Ct. 1913 at 1916, 20 L.Ed.2d 1082 (1968). In view of the Supreme Court's decision in *Gardner* and a number of other cases, discussed below, the proper resolution of the question is not difficult.

In Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), the court held that statements made by police officers during an inves-

any political subdivision thereof, a public authority or with a public department, agency or official of the state or of any political subdivision thereof or of a public authority, refuses to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant questions concerning such transaction or contract, and any firm, partnership or corporation, of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any public authority or any official of any public authority created by the state or any political subdivision, for goods, work or services, for a period of five years after such refusal or until a disqualification shall be removed pursuant to the provisions of section twenty-six hundred three of this title.

It shall be the duty of the officer conducting the investigation before the grand jury, the head of a state department, the chairman of the temporary state commission or other state agency, the organized crime task force in the department of law, the head of a city department or other city agency before which the refusal occurs to send notice of such refusal, together with the names of any firm, partnership or corporation of which the person so refusing is known to be a member, partner, officer or director, to the commissioner of trans-

portation of the state of New York, or the commissioner of general services as the case may be, and the appropriate departments, agencies and officials of the state, political subdivisions thereof or public authorities with whom the person so refusing and any firm, partnership or corporation of which he is a member, partner, director or officer, is known to have a contract. However, when such refusal occurs before a body other than a grand jury, notice of refusal shall not be sent for a period of ten days after such refusal occurs. Prior to the expiration of this ten day period, any person, firm, partnership or corporation which has become liable to the cancellation or termination of a contract or disqualification to contract on account of such refusal may commence a special proceeding at a special term of the supreme court, held within the judicial district in which the refusal occurred, for an order determining whether the questions in response to which the refusal occurred were relevant and material to the inquiry. Upon the commencement of such proceeding, the sending of such notice of refusal to answer shall be subject to order of the court in which the proceeding was brought in a manner and on such terms as the court may deem just. If a proceeding is not brought within ten days, notice of refusal shall thereupon be sent as provided herein.

tigation by the state attorney general into the alleged fixing of traffic tickets were inadmissible since the choice given to them—either to forfeit their jobs or incriminate themselves—violated their constitutional privilege against self-incrimination. On the same day, in Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), the court decided that New York could not disbar a lawyer solely for refusing, on the basis of the privilege against self-incrimination, to produce financial records and to testify at a judicial inquiry.

In *Gardner*, the court clearly set out the controlling principle. While a state may not discharge a public employee for refusing to waive a right which the Constitution guarantees to him, such a discharge would be without constitutional prohibition if, without being required to waive his immunity, the public employee fails to answer questions relevant to the performance of his official duties. The point was reiterated in Uniformed Sanitation Men v. Commissioner, 392 U.S. 280, at 284–285, 88 S.Ct. 1917, 20 L.Ed.2d 1089 (1968):

> As we stated in *Gardner* . . . if New York had demanded that petitioners answer questions specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment without requiring relinquishment of the benefits of the constitutional privilege, and if they had refused to do so, this case would be entirely different. In such a case, the employee's right to immunity as a result of his compelled testimony would not be at stake. But here the precise and plain impact of the proceedings against petitioners . . . was to present them with a choice between surrendering their constitutional rights or their jobs. Petitioners as public employees are entitled, like all other persons, to the benefit of the Constitution, including the privilege against self-incrimination. . . .
> At the same time, petitioners, being public employees, subject themselves to dismissal if they refuse to account for their performance of their public trust, after proper proceedings, which do not involve an attempt to coerce them to relinquish their constitutional rights.

Quite clearly, then, the plaintiffs' disqualification from public contracting for five years as a penalty for asserting a constitutional privilege is violative of their Fifth Amendment rights. Equally clear is that, within the proper limits, public employees are not immune from being compelled to account for their official actions in order to keep their jobs. Until rewritten so as to comply with constitutional standards, Sections 103–a and 103–b of New York's General Municipal Law and Sections 2601 and 2602 of the New York Public Authorities Law are unconstitutional, and the defendants are enjoined from their further enforcement.

So ordered.