MOBIL OIL CORPORATION and
William A. Davis, Plaintiffs,

v.

Louis J. LEFKOWITZ, Attorney General
of the State of New York, Defendant.

No. 74 CIV. 4088.

United States District Court,
S. D. New York.

April 26, 1977.

On Motion for Reargument June 29, 1977.

Donovan, Leisure, Newton & Irvine by Sanford M. Litvack, John H. Wilkinson, Jean M. Prewitt, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York by Gabriel I. Levy, Joel Lewittes, David R. Spiegel, Asst. Attys. Gen., New York City, pro se.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Plaintiff Mobil Oil Corporation (Mobil) is a New York Corporation which sells petroleum and various other products to private and public customers—including New York governmental entities.

Plaintiff, William A. Davis (Davis) (now deceased) was an employee of Mobil. On April 23, 1974 Davis was subpoenaed to testify before a special grand jury in New York County which was investigating "certain practices with respect to public bidding for contracts for gasoline and diesel fuel . . . ." (Lefkowitz letter). Upon entering the jury room on April 30, 1974, Davis was asked to sign a waiver of immunity so that the answers he gave to the grand jury could be later used against him. Davis refused to sign the waiver and proceeded to answer the grand jury's questions under the obligatory statutory grant of immunity. N.Y.C.P.L. § 190.40.

After Davis had refused to waive immunity, Louis J. Lefkowitz, the defendant and Attorney General of the State of New York, proceeded to mail the letter, attached hereto as an appendix, and which is at issue in this case to various officials throughout New York State on August 29, 1974.[1] The letter purported to be mailed pursuant to N.Y. General Municipal Law Section 103–b (fully set forth in the margin).[2] This law

---

1. According to defendant's statement of undisputed facts under Rule 9(g) of the General Rules for the Southern District, the letter was sent to the mayors of the City of New York and the City of Albany and ten county executives throughout the State. (¶ 17).

2. *Disqualification to contract with municipal corporations and fire districts*

Any person who, when called before a grand jury, head of a state department, temporary state commission or other state agency, the organized crime task force in the department of law, head of a city department or other city agency, which is empowered to compel the attendance of witnesses and examine them under oath, to testify in an investigation concerning any transaction or contract had with the state, any political subdivision thereof, a public authority, or with a public department, agency or official of the state or of any political subdivision thereof or of a public authority, refuses to sign a waiver of immunity against subsequent criminal prosecution or to answer any relevant question concerning such transaction or contract, and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any municipal corporation or fire district, or with any public department, agency or official thereof, for goods, work or services, for a period of five years after such refusal or until a disqualification shall be removed pursuant to the provisions of section one hundred three-c of this article.

It shall be the duty of the officer conducting the investigation before the grand jury, the head of a state department, the chairman of the temporary state commission or other state agency, the organized crime task force in the department of law, the head of a city department or other city agency before which the refusal occurs to send notice of such refusal, together with the names of any firm, partnership or corporation of which the person so refusing is known to be a member, partner, officer or director, to the commissioner of transportation of the state of New York and the appropriate departments, agencies and officials of the state, political subdivisions thereof or public authorities with whom the person so refusing and any firm, partnership or corporation of which he is a member, partner, director or officer, is known to have a contract. However, when such refusal occurs before a body other than a grand jury, notice of refusal shall not be sent for a period of ten days after such refusal occurs. Prior to the expiration of this ten day period, any person, firm, partnership or corporation which has become liable to the cancellation or termination of a contract or disqualification to contract on account of such refusal may commence a special proceeding at a special term of the supreme court, held within the judicial district in which the refusal occurred, for an order determining whether the questions in response to which the refusal occurred were relevant and material to the inquiry. Upon the commencement of such proceeding, the sending of such notice of refusal to answer shall be subject to order of the court in which the proceeding was brought in a manner

provides that if a person called before a grand jury investigating contracts with the state or its political subdivisions refuses to waive immunity, this person "and any firm, partnership or corporation of which he is a member, partner, director or officer shall be disqualified from thereafter selling to or submitting bids to or receiving awards from or entering into any contracts with any municipal corporation [and other specified governmental entities] for a period of five years . . . ."

The letter noted Davis' refusal to waive immunity, the fact that Davis worked for Mobil, and that Mobil is now accordingly disqualified from entering into any more contracts with the State. According to Lefkowitz' interpretation of §§ 103-a and 103-b, Davis is an "officer" or "member" of Mobil. The letter further suggests that §§ 103-a and 103-b are still viable statutes as applied to corporations despite the fact that the Supreme Court invalidated these statutes as they applied to the disqualification of *individuals* from entering into contracts after they had refused to waive their immunity. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).

The complaint asserts four causes of action to support its prayer for a declaratory judgment, injunctive relief and damages: 1) Both plaintiffs claim that §§ 103-a and 103-b are no longer viable statutes since they were declared unconstitutional as a *whole* in *Turley* and not only as applied to individuals; 2) Mobil alone asserts that even if *Turley* did not completely invalidate

the statutes, they are unconstitutional as applied to corporations since they violate the Fourteenth Amendment; 3) Mobil also claims that the letter was illegal under state law because Davis is not an "officer" or "member" of Mobil; and 4) Davis claims that the statutes are unconstitutional since the disqualification of Mobil will directly harm him and violate his Fifth and Fourteenth Amendment rights.[3]

Mobil and Davis filed a motion for summary judgment under Rule 56, Fed.R. Civ.P., on their First cause of action, and Mobil has moved for summary judgment on its Third cause of action. Davis has died since this action was filed, and only Mobil's claims remain for consideration.[3a] Lefkowitz has filed a cross motion for summary judgment, or, in the alternative, judgment on the pleadings, Rule 12(c) Fed.R.Civ.P., on the grounds that 1) there is no case or controversy; 2) he is immune from money damages under 42 U.S.C. § 1983; and 3) Davis has no standing to sue. (This last ground is, of course, moot.) The court concludes that there is no genuine issue as to any material fact and that the case is ripe for summary judgment and judgment on the pleadings.

In defendant's opening parry, he asserts that there is no case or controversy to support this court's jurisdiction. Noting that the courts will refuse to adjudicate an abstract or academic dispute, Lefkowitz argues that this is such a case. At the time of the suit (September 19, 1974) all public

and on such terms as the court may deem just. If a proceeding is not brought within ten days, notice of refusal shall thereupon be sent as provided herein.

Section 103-a of the General Municipal Law provides that:

"A clause shall be inserted in all specifications or contracts made or awarded by a municipal corporation or any public department, agency or official thereof" which enumerates the sanctions of § 103-b and also adds that that and other contracts may be cancelled or terminated by the municipal corporation or fire district without incurring any penalty.

**3.** In connection with this motion for summary judgment on plaintiffs' first and third causes of action, plaintiffs request the following relief: a declaratory judgment declaring either that N.Y.

G.M.L. §§ 103-a and 103-b have been declared unconstitutional by the Supreme Court or that such sections have been improperly invoked against Mobil. Plaintiffs also seek an injunction restraining defendant from enforcing or threatening to enforce these sections and compensatory and punitive damages.

**3a.** On March 16, 1976 the court, with all parties represented, was apprised of plaintiff Davis' death. This was sufficient "suggestion of death" under Rule 25(a)(1), Fed.R.Civ.P., to begin the running of the 90 day period. *Cheramie v. Orgeron*, 434 F.2d 721, 725 (5th Cir. 1970). Since no motion for substitution of Davis has been made by any party at the time of the filing of this opinion, his action must be dismissed.

bidding for petroleum, even in connection with purchases by government agencies, had been suspended by the Emergency Petroleum Allocation Act of 1973 (EPAA) and the regulations promulgated thereunder. Title 15 U.S.C. §§ 751 et seq.; 10 C.F.R. Parts 210 and 211, Federal Energy Administration Ruling 1974–19 (Federal Energy Guidelines, ¶ 16,029). Since there was no more public bidding, says Lefkowitz, Mobil could not be harmed by a letter which suggested that Mobil ought to be excluded from such bidding. In fact, Lefkowitz adds that the letter was just that: only a "suggestion" or an "opinion" which the recipients were free to ignore or to follow. Any harm which Mobil might suffer, concluded defendant, is purely speculative since it depends on the willingness of Congress to let the EPAA expire and on the willingness of local officials to follow the Attorney General's "opinion" letter.

The Supreme Court has discussed the nature of a "case" or "controversy" on numerous occasions. In *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 464, 81 L.Ed. 617 (1937), Chief Justice Hughes defined "controversy" as follows:

> "A controversy in this sense must be one that is appropriate for judicial determination. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." (Citations omitted.)

█ Certainly the posture of this case presents a controversy in the sense that there are clearly defined issues upon which specific relief can be granted. The Attorney General has sent a letter to numerous persons suggesting that Mobil is no longer eligible to participate in public bidding. Mobil claims that the letter was not sent in accordance with the statute and that, in any case, the statute has been declared unconstitutional. The relief could take many discreet forms, such as requiring the Attorney General to send a second letter retracting the first.

This is not a case where the Attorney General is threatening, perhaps "unjustifiably", to send the disputed letter upon a future contingency, cf. *Eccles v. Peoples Bank*, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784 (1948), or where the plaintiff asserts illegal governmental acts but has not been himself affected, *O'Shea v. Littleton*, 414 U.S. 488, 94 S.Ct. 669 (1974), *Danville Tobacco Association v. Freeman*, 122 U.S.App. D.C. 135, 351 F.2d 832 (1965). Rather, the letter has already been sent, and Mobil claims that this action, which was directed specifically at it, was unlawful.

Citing *O'Shea, supra*, 414 U.S. at 498, 94 S.Ct. 669, 677, Lefkowitz argues that "the threat of injury from the alleged course of conduct they attack is simply too remote to satisfy the case-or-controversy requirement and permit adjudication by a federal court." [4] When Mobil's motion for summary judgment was first filed, public bidding for petroleum products had been suspended in New York by the EPAA. However, even under that act, the regulations promulgated pursuant thereto did *not* suspend public bidding on amounts of petroleum products less than 84,000 gallons,[5] title 11 C.F.R. § 211.51 ("wholesale purchaser-consumer"), or on amounts of surplus petroleum. Title 10 C.F.R. § 211.10(g), F.E.A. Ruling 1974–19. In any case, public bidding could resume if both the buyer and seller of petroleum mutually agreed to terminate the relationship.

---

4. Mobil alleges that it is faced with economic loss if any of the addressees should follow the advice contained in defendant's letter.

5. Defendant claims that Mobil has no contracts for less than 84,000 barrels of petroleum products. Mobil disputes this assertion, but the fact remains that so long as the letter stands, Mobil may be prevented from entering such smaller contracts. Mobil's ability to enter such contracts is "chilled" by the existence of the defendant's letter.

10 C.F.R. § 211.9(a)(2)(ii). Furthermore, while this motion has been pending, essentially all petroleum products, except gasoline, have been exempted from the allocation regulations. Title 11 C.F.R. § 210.35.

Lefkowitz sent the letter pursuant to § 103-b with the goal of encouraging the disqualification of Mobil from contracting with the governmental entities of New York State.[6] Mobil need not wait until it can prove that it was not awarded a contract because this letter was mailed. The mere existence of this letter is certainly enough to encourage state officials to exclude Mobil from bidding on their contracts. Defendant can not mail such a letter—with the clear intent of affecting Mobil's business in the State—and then plead that there is no case or controversy to resolve. "[T]he challenged governmental activity in the present case is not contingent, has not evaporated or disappeared, and, by its continuing and brooding presence, casts what may well be a substantial adverse effect on the interests of the petitioning parties." *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974).

On the merits, Mobil's first claim is that §§ 103-a and 103-b had previously been declared unconstitutional by the Supreme Court. In the letter itself, Lefkowitz anticipated this argument: "While there may be various interpretations of the effect of the *Turley* case, it is the opinion of my office that the case does not invalidate the statute [§ 103-b] as applied to corporations." This court agrees with Lefkowitz, but now holds that the entire statute is unconstitutional since its sections are not severable; the corporate penalties must fall if the individual sanctions are stricken.[7]

In *Campbell Painting Corp. v. Reid*, 392 U.S. 286, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968), the Court held that a corporation could be prohibited from contracting with the public authorities of New York under the Public Authorities Law § 2601, the analog of General Municipal Law § 103-a. In *Campbell*, the plaintiff's president refused to sign a waiver of immunity before the grand jury, and the N.Y City Housing Authority notified plaintiff that its contracts with the Authority were being terminated. The Court did not affirmatively rule that § 2601 was constitutional but said that the corporation-plaintiff could not claim that its president's Fifth Amendment right against self-incrimination was being violated since "[i]t has long been settled in federal jurisprudence that the constitutional privilege against self-incrimination is 'essentially a personal one, applying only to natural individuals.' It 'cannot be utilized by or on behalf of any organization, such as a corporation' (citations omitted)." 392 U.S. at 288–89, 88 S.Ct. at 1979–80.

While *Campbell* focused on the disqualification of a corporation, the three-judge court in *Turley v. Lefkowitz*, 342 F.Supp. 544 (W.D.N.Y.1972) was faced with the question whether licensed architects who

---

**6.** Another ground why this is not a case or controversy, contends defendant, is that the "letters of the Attorney General to the twelve municipal officials is no more than an unsolicited private communication attempting as the chief law enforcement official of the State to give informal advice to municipal officials during a difficult energy and financial crisis which is no way purports to give any binding legal advice." (Def's brief at 14.) Defendant cites *Ashton v. Thornley Realty Co.*, 346 F.Supp. 1294 (S.D.N.Y.1972), aff'd 471 F.2d 647 (2d Cir. 1973) which holds that municipal officials are not bound by opinions of the Attorney General. This may be true, but the letter was not a bit of "informal advice" as the defendant characterizes it. The letter itself says that it is being sent "[p]ursuant to the provisions of General Mu-nicipal Law § 103-b . . . ." It is from the chief law enforcement officer of the state who is too busy to spend his time making mere "suggestions" to other state officials. While it is true that the letter is not binding on those to whom it was sent, it was sent to persuade the recipients that § 103-b had not been declared unconstitutional by the Supreme Court and that the section's sanctions against Mobil should be applied by the letter's recipients.

**7.** Since plaintiffs' various causes of action are in the alternative, this court does not reach Mobil's motion for summary judgment on its third cause of action: that Davis was not a "member" or "officer" of Mobil.

had been *employed* by various municipalities and state and county agencies could be disqualified under §§ 2601, 2602, 103-a and 103-b for refusing to sign waivers of immunity before the grand jury. The court relied on a string of Supreme Court cases which held that individual employees could not be faced with the Hobson's choice of deciding whether to waive immunity or forfeit their job. The court did not discuss *Campbell* or the disqualification of corporations and concluded with the following:

> "Quite clearly, then, the plaintiffs' disqualification from public contracting for five years as a penalty for asserting a constitutional privilege is violative of their Fifth Amendment rights. Equally clear is that, within the proper limits, public employees are not immune from being compelled to account for their official actions in order to keep their jobs. Until rewritten so as to comply with constitutional standards, Sections 103-a and 103-b of New York's General Municipal Law and Sections 2501 and 2602 of the New York Public Authorities Law are unconstitutional, and the defendants are enjoined from their further enforcement. So ordered." 342 F.Supp. at 549.

The Supreme Court affirmed the judgment of the District Court in *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973).[8]

Mobil bases its claim that §§ 103-a and 103-b are unconstitutional on two alternative grounds. First, Mobil claims that *Campbell* was implicitly overruled by *Tur-*

ley arguing that, unlike *Campbell, Turley* accepts the reasoning that by punishing a corporation for an individual's assertion of his Fifth Amendment rights, the individual, himself, may be injured and his Fifth Amendment privilege compromised if his corporation is disqualified from contracting with the State. Second, Mobil claims that even if *Campbell* has not been overruled, *Turley* has declared the whole of §§ 103-a and 103-b unconstitutional. We need not consider the first argument, since this court finds that although the three-judge *Turley* court did not consider the constitutionality of §§ 103-a and 103-b as applied to corporations, the entire statutes must stand or fall as a whole, and thus the statutes are unconstitutional as applied to corporations as well as individuals.

The three-judge court in *Turley* did not consider the question whether §§ 103-a and 103-b are severable such that the corporate penalties could survive the unconstitutionality of the individual ones. Therefore, this court finds that opinion did not enjoin the Attorney General from enforcing the corporate sanctions of these statutes.[9] The question to be decided is whether §§ 103-a and 103-b are severable so that the corporate penalties can remain even after the individual penalties have been ruled unconstitutional.

 This question is properly decided by a single judge and not a three-judge court.[10] Although the three-judge court statute, 28 U.S.C. § 2281, is in effect due to the non-retroactivity of the recent three-

---

8. *People v. Avant,* 33 N.Y.2d 265, 269, 352 N.Y.S.2d 161, 167, 307 N.E.2d 230, 234 (N.Y. 1973) notes, without qualification, that "sections 103-a and 103-b . . . as presently enacted are unconstitutional . . ." Like *Turley,* this case dealt with *individuals* who were compelled to waive immunity in connection with an investigation concerning their state contracts. *Avant did not address the* question of the constitutionality of these sections as applied to corporations.

9. Modest support for this position is found in *Turley,* 414 U.S. at 75, 94 S.Ct. at 322: "A three-judge court was convened and declared the four statutory *provisions* at issue unconsti-

tutional under the Fourteenth and Fifth Amendments . . . (emphasis added)." A certain significance may be placed on the use of the phrase "statutory provisions" as opposed to "statutes".

10. Neither party has demanded a three-judge court, apparently on the assumption that this court merely had to "interpret" the holding of *Turley* and determine whether that court invalidated the statutes in whole or in part. Since 28 U.S.C. § 2281 is jurisdictional, *Covington v. Montgomery County School Board,* 139 F.Supp. 161 (M.D.N.C.1956), this question is raised *sua sponte* by this court.

judge court act,[11] a three-judge court is only required when a state statute is attacked on the grounds that it violates the federal Constitution and when the constitutional issue raised is a substantial one. *Idewild Liquor Corp. v. Epstein*, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *New York State Waterways Association, Inc. v. Diamond*, 469 F.2d 419 (2d Cir. 1972). In the case of §§ 103-a and 103-b, the constitutionality of the corporate portions turns on statutory interpretation and an examination of the legislative history to determine whether the statutes are severable. No federal constitutional questions are raised, and the inquiry is more analogous to those cases which hold that no three-judge court is required. *Green v. Phillips Petroleum Co.*, 119 F.2d 466 (8th Cir. 1941) (a single judge could initially determine whether the statute *applied* to a corporation which challenged its constitutionality); *Williams v. Ball*, 194 F.Supp. 393 (W.D.N.Y.), *aff'd* 294 F.2d 94 (2d Cir. 1961), *cert. denied* 368 U.S. 990, 82 S.Ct. 598, 7 L.Ed.2d 526 (1962) (a single judge could determine whether the state statute was unconstitutional on the ground that it conflicted with the Federal Communications Act).

■ We turn now to the severability of §§ 103-a and 103-b. A finding that a portion of a statute is unconstitutional will not necessarily defeat the remaining portions unless it is clear that the legislature would not have enacted the constitutional portion independent of the rest. *Champlin Refining Co. v. Corporation Commission of State of Oklahoma*, 286 U.S. 210, 234, 52 S.Ct. 559, 76 L.Ed. 1062 (1932). If the statute is an inseparable whole, then the whole must fall. If, however, the statute is composed of individual parts, then the constitutional parts alone can be excised. *Fowler v. Gage*, 301 F.2d 775 (10th Cir. 1962). Absent a severability clause in §§ 103-a and 103-b, *Carter v. Carter Coal Co.*, 298 U.S. 238, 312, 56 S.Ct. 855, 80 L.Ed. 1160 (1936) suggests that it is presumed that the whole statute falls along with the objectionable clause unless it can be shown that the legislature would

have passed the unexcised portion alone. (*But cf. Buckley v. Valeo*, 171 U.S.App.D.C. 172, 519 F.2d 821, 879 (1975), *modified*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) which appears to hold that the presumption is in favor of separability.)

Each of the four statutes at issue in *Turley* contain the following language: "[Such person] and any firm, partnership or corporation, of which he is a member, partner, director or officer shall be disqualified . . . ." The essence of the statutory scheme is that both the individual *and* his business entity will be jointly punished if the statute is contravened. With the elimination of the personal (as opposed to the business) sanction, the reach of the statute is drastically altered; its deterrent effect minimized in many circumstances; and its general effectiveness emasculated. *See United States v. $125,882 in U. S. Currency*, 286 F.Supp. 643 (S.D.N.Y.1968); *United States v. Jackson*, 390 U.S. 570, 586, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

■ An examination of the legislative history suggests that a primary goal of the Legislature in enacting §§ 103-a and 103-b was to provide sanctions against individuals who refused to testify before the grand jury. *See generally United States ex rel. Laino v. Warden of Wallkill Prison*, 246 F.Supp. 72 (S.D.N.Y.1965), *aff'd per curiam*, 355 F.2d 208 (2d Cir. 1966). On approving New York Session Law 1959, c. 605 (the source of these and related sections) then Governor Rockefeller stated:

> "In a recent grand jury investigation, a number of persons who had transacted business with a governmental agency refused to answer questions about those transactions put to them by the grand jury. In its report, the grand jury recommended consideration of amendments to the law which would disqualify such persons from further transactions with public agencies. Unlike a private person who may contract with whom he wishes, a public agency usually lets contracts by public auction and is required to accept

11. Public Law 94–381, § 7, 90 Stat. 1119, 28 U.S.C. § 2284.

the lowest bid. For that reason, it would seem appropriate to disqualify the bids of persons who are unwilling to disclose to a grand jury facts relating to some prior contract with the public. Likewise, it would seem appropriate that public contracts should provide that the benefits accruing under them be available only so long as the beneficiary is willing, when required by a grand jury, to disclose any information he may have as to a public contract."

The Memorandum of the Attorney General (*N.Y. State Legislative Annual 1959* at 148), put a similar emphasis on the sanctions which are directed toward the individual in §§ 103-a and 103-b.

The court does not suggest that these statutes are more concerned with individual than corporate contracts with state agencies. The legislative history does suggest, however, that these concerns were at least equally weighty. It cannot be said that the Legislature would have enacted §§ 103-a and 103-b if they could only have been applied to firms, partnerships and corporations.

This case is distinguished from those cases which have held only portions of statutes unconstitutional. *United States v. Jackson*, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968) (kidnapping statute upheld and only death penalty provision excised); *Champlin Refining Co. v. Corporation Commission of State of Oklahoma, supra* (striking only the penalty provision in a state regulatory law); *Connell v. Higginbotham*, 305 F.Supp. 445 (M.D.Fla.1969), *modified*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971) (only unconstitutional portions of loyalty oath stricken). It is more akin to those cases which have stricken the good with the bad portions: *Sloan v. Lemon*, 413 U.S. 825, 834, 93 S.Ct. 2982, 37 L.Ed.2d 939 (1973) (statute granting state aid to both sectarian and secular private schools was not severable); *United States v. $125,882 in U. S. Currency*, 286 F.Supp. 643 (S.D.N.Y.1968) (despite constitutional applications, entire tax statute is void).

Another reason to think that the Legislature would not have written §§ 103-a and 103-b in isolation is that the three-judge court in *Turley* suggested that (under *Gardner v. Broderick*, 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968)) an individual who refused to answer questions regarding his contract with the State, but who was not compelled to waive immunity, could be disqualified from contracting with the State. Considering the fact that valid sanctions can be applied against individuals, and that a major spur to the passage of §§ 103-a and 103-b was the refusal of individuals to testify, it is not likely that the Legislature would have passed these statutes without including sanctions against individuals.

This court thus concludes that both statutes are unconstitutional in their entirety and that the Attorney General should be enjoined from enforcing them against Mobil since Lefkowitz has not suggested that the letter was mailed pursuant to any statute other than § 103-b.

In response to plaintiff's motion for summary judgment, defendant moves for dismissal of Mobil's damage claims under Rule 12(c), Fed.R.Civ.P., on the ground that the Attorney General is immune from damage claims under 42 U.S.C. § 1983, on the authority of *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). This court holds that the Attorney General is absolutely immune from damage claims under the facts of this case.

The question presented in *Imbler* was "whether a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution is amenable to suit under 42 U.S.C. § 1983 for alleged deprivations of the defendant's constitutional rights." 424 U.S. at 410, 96 S.Ct. at 985, 47 L.Ed.2d at 132. Paul Imbler, the § 1983 plaintiff, charged that District Attorney Pachtman had knowingly allowed perjured testimony to be used against Imbler in his felony murder trial in the state court and that Pachtman was responsible for the suppression of other evidence purportedly favorable to the defense.

The Court held "that in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983" and, in essence, confirmed the District Court's dismissal of Imbler's suit under Rule 12(b)(6), Fed.R. Civ.P. The Court's reasoning in *Imbler* is important since it applies equally to the case at bar.

Under common law, the prosecutor is absolutely immune from a civil action for malicious prosecution when the prosecutor is engaged in the performance of the duties imposed upon him by law. *Yaselli v. Goff*, 12 F.2d 396 (2d Cir. 1926).

The question for the Supreme Court was whether, in *Imbler*, the doctrine of absolute immunity for prosecutors should be carried over completely to damage suits under § 1983. It answered in the affirmative as to the initiation and presentation of a criminal case to the court. The Court held that "the same considerations of public policy that underlie the common-law rule likewise countenance absolute immunity under § 1983" as to matters related to the judiciary process. 424 U.S. at 424, 96 S.Ct. at 992, 47 L.Ed.2d at 140. The Court ruled the prosecutor must be free to exercise his independent judgment when deciding whether to instigate a prosecution. If he were constrained in his judgment by the possibility of a § 1983 damage suit, the public trust in the prosecutor would suffer and the task of law enforcement would be compromised. The reason for this is that such damage suits could possibly be pressed successfully even against the honest prosecutor since due to the complexities of a criminal proceeding, the propriety of the prosecutor's behavior is often unclear and is a problem with which "judges struggle in actions for post-trial relief, sometimes to differing conclusions." 424 U.S. at 425, 96 S.Ct. at 992, 47 L.Ed.2d at 140. Furthermore, allowing the § 1983 action could result in a retrial of most of the issues that may have been previously litigated on appeal or in a habeas corpus proceeding. This time, however, the finder of fact would be a jury which may tend to find liability more often than in the case of other government officials since the jury would be unfamiliar with the singular pressures and time constraints which shape the prosecutor's conduct.

In the case at bar, the Attorney General was conducting a grand jury investigation respecting Mobil's bidding practices in New York State. Although the Attorney General was not "presenting the State's case" as in *Imbler*, he was "initiating a prosecution". The grand jury proceedings were clearly a prelude to one or more indictments if sufficient evidence could be produced.[12] The grand jury is an appendage of the court. Its functions are intimately connected with the judicial process and the ultimate presentation of the state's case. *Brown v. United States*, 359 U.S. 41, 49, 79 S.Ct. 539, 3 L.Ed.2d 609 (1959); *United States v. Campanale*, 518 F.2d 352, 366 (9th Cir. 1975), *cert. denied sub nom.*, *Matthews v. United States*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976).

During these grand jury proceedings, Davis refused to waive immunity, and, under the mandatory language of § 103-b, the Attorney General was obligated to mail notice of Davis' refusal to the appropriate government officials. This action was a direct outgrowth of the grand jury proceedings. Defendant Lefkowitz was not acting pursuant to a policy of his office in mailing the letter. He acted pursuant to § 103-b as directed by the Legislature in his capacity as Attorney General. The public policy underlying *Imbler* clearly applies here. As in *Imbler*, the Attorney General must be free not only to exercise his independent judgment when conducting grand jury proceedings without fear of being liable for damages for his actions, but must be free to carry out legislative fiat without fear of personal liability for his compliance with legislative direction. Damage suits brought under § 1983 for acting in accordance with

12. The grand jury subsequently handed up three indictments against Mobil in May and July of 1974.

legislative direction would divert the prosecutor's attention and energy away from the business of enforcing the laws. Allowing a damage action here could also, as in *Imbler*, possibly result in duplicitous litigation. Under § 103-b, an aggrieved corporation can institute a special proceeding in the State court (C.P.L.R. §§ 401 et seq.) in order to test whether the Attorney General's actions under that section were proper. A separate action in the federal court under § 1983 could result in duplicitous litigation as well as inconsistent results.

Even prior to *Imbler*, the Second Circuit had already passed on the extent of the prosecutor's immunity under § 1983. In *Fanale v. Sheehy*, 385 F.2d 866, 868 (2d Cir. 1967) the plaintiff brought an action under 42 U.S.C. §§ 1983 and 1985 claiming that the defendants (justice of the peace, various police officers and the prosecutor) were engaged in a conspiracy to deprive him of his civil rights. Plaintiff claimed that Justice of the Peace Sheehy signed a defective information which the defendant police officers used as authority to threaten and harass him. The court held that since "the complaint provides no basis for assuming that [Prosecutor] Little played no part except that imposed upon him by his official position . . . he . . . is entitled to immunity." 385 F.2d at 868.

The rationale of *Fanale* mandates a grant of absolute immunity for Lefkowitz in this case as well. There is no allegation to the effect that Lefkowitz was doing anything other than following the dictates of § 103-b when he mailed the letter to the State officials.

██ As an alternative ground for dismissing Mobil's damage claims, this court holds, as a matter of law, that there were reasonable grounds for believing that §§ 103-a and 103-b were constitutional as applied to corporations and that the defendant believed these grounds in good faith. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). As the instant opinion demonstrates, whether *Turley* voided the statutes in their entirety was not at all clear. The court did not mention corporations and did not hold the statutes non-severable. This court holds that bad faith, under the circumstances of this case, would have to be predicated on a showing that the Attorney General's conduct had been plainly precluded by a recent decision of the Supreme Court.

Mobil has asked the court to grant it discovery rights on the issue of defendant's bad faith. The request is denied. Mobil has not alleged that Lefkowitz acted in bad faith other than to assert that the Attorney General was mistaken about the effect of *Turley* on the entirety of the statutes. There must be at least an allegation of bad faith other than a mistake of law to provide a basis for such discovery of an attorney general.

In conclusion, Mobil is entitled to declaratory judgment but not to damages. There does not appear to be any need for an injunction at this time, there being no indication the Attorney General intends to enforce the statutes in the future.

Submit order on notice.

### APPENDIX

488–7495

August 29, 1974

Hon. Abraham D. Beame
Mayor
The City of New York
City Hall
New York, New York

Dear Mr. Beame:

Pursuant to the provisions of General Municipal Law § 103–b, we hereby inform you that on May 1, 1974, Mr. Myron A. Wright refused to sign a waiver of immunity before the Special Grand Jury convened for the March 1974 Term in Supreme Court, New York County. The Special Grand Jury has been and is continuing to investigate certain practices with respect to public bidding for contracts for gasoline and diesel fuel in the State of New York.

Mr. Wright is chairman of the board of directors and chief executive officer of Exxon Company, U.S.A., which in turn is a division of Exxon Corporation. Mr. Wright is also a member of the board of directors

and executive vice president of Exxon Corporation.

On April 30, 1974, Mr. Samuel E. Charlton, a vice president of Exxon Corporation, refused to sign a waiver of immunity before the same Grand Jury.

It is my duty to inform you that, in addition to the refusals by Messrs. Wright and Charlton of Exxon to waive immunity, certain other oil company officials also refused to waive immunity before the same Grand Jury in connection with the public bidding investigation. Mr. T. G. Harper, vice president of Gulf Company U.S. (a subsidiary of Gulf oil Corporation), and Mr. W. H. Main, manager of Industrial and Commercial Marketing for the northern region and a stockholder of Gulf Oil Corporation, both refused to waive immunity on May 21, 1974. Mr. William A. Davis, regional commercial sales manager of Mobil Oil Corporation, refused to waive immunity before the same Grand Jury on April 30, 1974. Mr. Davis had signed bids to the State of New York as "attorney in fact", and may be deemed an "officer" or "member" of the corporation within the meaning of the statute.

The equivalent of the aforementioned statute was successfully challenged on constitutional grounds in *Lefkowitz v. Turley*, 94 S.Ct. 316 (1974), decided recently by the United States Supreme Court. The *Turley* case, however, involved individuals, and not corporations. The prior case of *Matter of Campbell Painting Corp. v. Reid*, 392 U.S. 286 (1968), holding such statutes valid with respect to corporations, was not expressly overruled.

While there may be various interpretations of the effect of the *Turley* case, it is the opinion of my office that the case does not invalidate the statute as applied to corporations.

The Federal Emergency Petroleum Allocation Act of 1973 and the regulations promulgated pursuant thereto have operated to suspend public bidding requirements (under General Municipal Law § 103) as they apply to wholesale purchasers of more than 84,000 gallons of allocated petroleum products in any one year. These federal regulations, however, will expire on February 28, 1975, and upon such expiration, the provisions of State law are revived. *Sturgis v. Spafford*, 45 N.Y. 446; *Henderson v. Spafford*, 59 N.Y. 131.

In line with the foregoing, it would appear that the provisions of General Municipal Law § 103–b as to disqualification would be operative subsequent to the expiration of the federal regulations.

With respect to wholesale purchasers of less than 84,000 gallons of any particular allocated product per year, which are not bound by the federal regulations, the provisions of General Municipal Law §§ 103, 103–a and 103–b would be currently operative with respect to such corporations.

Sincerely,

LOUIS J. LEFKOWITZ
Attorney General
By

CALT:mm

CHARLES A. LA TORELLA, JR.
Assistant Attorney General
In Charge
State Antitrust Enforcement

## ON MOTION FOR REARGUMENT

Plaintiff's motion for reargument is granted.

The court agrees that Davis' action should not be dismissed. His action was dismissed, *sua sponte*, on the ground that no motion for substitution was made despite the fact that over 90 days (i. e. one year) had passed after the court (and all parties) were aware that Davis had died. However, the 90 day period begins to run only after a formal "statement of the fact of death" (Form 30) is filed under Rule 25(a), Fed.R. Civ.P. *United States v. Miller Brothers Construction Co.*, 505 F.2d 1031, 1034 (10th Cir. 1974); *Dolgow v. Anderson*, 45 F.R.D. 470, 471 (E.D.N.Y.1968). If defendant wanted to move for dismissal on the ground that plaintiff had failed to move for substitution, it should have done so. The court could then have ruled on the motion after the parties had briefed the question.

In the event that the issue of Davis' standing to sue is still before the court

despite his death, the court finds that he does have the requisite standing. Since Davis' job with Mobil was to procure contracts for Mobil in New York State, the sanctions of §§ 103-a and 103-b, if applied against Mobil, could directly injure Davis (Davis Aff. ¶ 7). *Campbell Painting Corp. v. Reid,* 392 U.S. 286, 290–91, 88 S.Ct. 1978, 20 L.Ed.2d 1094 (1968) (Douglas, J. dissenting).

The court dismissed plaintiffs' damage claims on the (alternative) ground that there was no allegation that defendant Lefkowitz acted in bad faith other than the claim that he intentionally enforced the statutes in reckless disregard of plaintiffs' constitutional rights. Considering the unsettled state of the law with respect to §§ 103-a and 103-b and that there has been no definitive Supreme Court ruling as to the precise effect of *Turley v. Lefkowitz,* 342 F.Supp. 544 (W.D.N.Y.1972), it is incumbent upon plaintiffs to allege specific facts which point to the defendant's malice. Under the rather unique circumstances of this case, plaintiffs must allege more than bald conclusions of recklessness before the Attorney General of the State of New York can be subjected to discovery as to his motives in enforcing an arguably constitutional statute.