**FRIENDS OF THE SHAWANGUNKS, INC., Sarah L. Johnston, John Johnsen, Keith La Budde and Frank Wright, Plaintiffs,**

v.

**James G. WATT, Secretary, United States Department of the Interior, Russell E. Dickenson, Director, National Park Service, James W. Coleman, Jr., Regional Director, National Park Service, Mid-Atlantic Region, Don H. Castleberry, Deputy Regional Director, National Park Service, Mid-Atlantic Region and Marriott Corporation, Defendants.**

No. 82–CV–179.

United States District Court, N.D. New York.

March 28, 1983.

Whiteman, Osterman & Hanna, Albany, N.Y., for plaintiffs; Philip H. Gitlen, Albany, N.Y., of counsel.

Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., for defendant, U.S.; William P. Fanciullo, Asst. U.S. Atty., Albany, N.Y., of counsel.

Miller, Mannix, Lemery & Kafin, P.C., Glens Falls, N.Y., for defendant, Marriott Corp.; Benjamin R. Pratt, Jr., Glens Falls, N.Y., of counsel.

## MEMORANDUM–DECISION and ORDER

MINER, District Judge.

### I

According to the complaint, "[t]his is an action for declaratory and injunctive relief to compel the Secretary of the Interior of the United States and lower level officials of the Department of the Interior to enforce the requirements of section 6(f)(3) of the Land and Water Conservation Fund Act of 1965, *as amended,* 78 Stat. 897, 16 U.S.C. §§ 460*l*–4 *et seq.* ..." (Complaint, ¶ 1). Jurisdiction in this Court is invoked pursuant to the provisions of 28 U.S.C. §§ 1331 and 1361.[1] Before the Court is plaintiffs'

---

1. 28 U.S.C. § 1361. Action to compel an officer of the United States to perform his duty.

The district courts shall have original juris-

motion, pursuant to Fed.R.Civ.P. 37, to compel defendant National Park Service to designate some individual to testify on its behalf, and to produce and permit inspection of enumerated documents. Also before the Court is defendants' motion for an "Order Limiting Review to the Administrative Record, and Vacating the Plaintiffs' Notice of Deposition ... and the request for documents therein." (Defendants' Notice of Motion, November 9, 1982).

## II

Plaintiff Friends of the Shawangunks, Inc. is a not-for-profit corporation organized under the laws of the State of New York. It has approximately 600 members, and is devoted to ensuring the "preservation and prudent development of the Shawangunk Mountains in Ulster County, New York, as a natural resource for all to enjoy." (Complaint, ¶ 3). The remaining plaintiffs are individual members of Friends of the Shawangunks. Named as defendants herein are James G. Watt, Secretary of the Department of the Interior; Russell E. Dickenson, National Park Service Director; Don H. Castleberry, Deputy Regional Director, National Park Service; and the Marriott Corporation.

The Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. §§ 460*l*–4—460*l*–11 (hereinafter "Act"), provides for matching grants from the federal government to the several states for the acquisition, development and general planning of public outdoor park and recreation areas and facilities. In 1977, New York State acquired 1,370.49 acres in fee simple and 239.42 acres as a "conservation easement" contiguous to Minnewaska State Park [2] in Ulster County. Federal matching funds of $542,375.00 were provided to New York State for this acquisition.

The conservation easement was acquired by the Palisades Interstate Park Commission (hereinafter "PIPC")

for the purpose of, but not solely limited to, the conservation and preservation of unique and scenic areas; for the environmental and ecological protection of Lake Minnewaska and its watershed; and to prevent development and use in a manner inconsistent with the present use and operation of lands now owned and to be conveyed herein to [PIPC] and to be part of Minnewaska State Park....

(Complaint, Exhibit A, p.16). Subsequent to PIPC's acquisition of this conservation easement, defendant Marriott Corporation (hereinafter "Marriott") obtained an option to purchase approximately 590 acres of real property from Lake Minnewaska Mountain Houses, Inc., the present owner of Lake Minnewaska, and the grantor of the aforementioned easement. The real property subject to Marriott's option includes Lake Minnewaska and the lands encumbered by the conservation easement. Marriott acquired its option in order to develop a resort facility consisting, in part, of a proposed 400 room hotel, 300 condominium units, restaurants, ski facilities, and an 18 hole golf course to replace an existing 9 hole golf course. After obtaining its option to purchase, Marriott requested the PIPC to amend its conservation easement to allow for Marriott's proposed use of Lake Minnewaska and the lands subject to the easement. Thereafter, on July 20, 1981, the Commissioners of the PIPC resolved to have the PIPC amend the easement in order to allow Marriott to expand that part of the existing 9 hole golf course located within the easement area, develop support facilities within the easement area, increase utilization of water from Lake Minnewaska, provide trails for public use, and increase

diction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff.

**2.** Minnewaska State Park was formed in 1971 when the State of New York purchased approximately 7,000 acres of land abutting Lake Minnewaska. Since its inception, the park has

remained under the management and jurisdiction of the Palisades Interstate Park Commission, an interstate park commission formed by compact between the State of New York and the State of New Jersey, and governed by commissioners representing each of these two states. (Complaint, ¶ 15).

**666**

the acreage subject to the Conservation Easement.

Section 6(f)(3) of the Act provides, in part:

No property acquired or developed with assistance under this section shall, without the approval of the Secretary, be converted to other than public outdoor recreation uses. The Secretary shall approve such conversion only if he finds it to be in accord with the then existing comprehensive statewide outdoor recreation plan and only upon such conditions as he deems necessary to assure the substitution of other recreation properties of at least equal fair market value and of reasonable equivalent usefulness and location.

Implicit in this statutory provision is the necessity for a preliminary determination of whether a "conversion" has, in fact, occurred. In this regard, defendant Don H. Castleberry, Acting Regional Director of the Mid-Atlantic Region of the National Park Service, determined that allowing Marriott to proceed with its proposals would not result in a 6(f) conversion of the lands subject to the conservation easement.[3] In a letter to Albert E. Caccese, Deputy Commissioner and Counsel to the New York State Parks and Recreation and Historic Preservation Agency, Mr. Castleberry indicated that

[t]his office has been aware of the Marriott proposal since August of 1979, and has been monitoring its development. This office has reviewed the Draft Environmental Impact Statement and Hearing Report by the New York State Department of Environmental Conservation on the application by the Marriott Corporation in connection with the development of the Marriott/Minnewaska project. We have also reviewed the original L & WCF project for Lake Minnewaska State Park, including the conservation easement. In addition, we have reviewed the proposed amended conservation easement entitled the Restated and Amended Conservation Easement Agreement, the Limited Development Agreement, and the Foot Travel Easement, which I understand are to be conveyed to the PIPC in place of the original conservation easement. On the basis of this understanding, and upon consultation with the Associate Solicitor, Conservation and Wildlife, I conclude that none of the stated purposes for which the easement was acquired are defeated and that public recreation opportunities have been increased. Accordingly, the grant contract need not be modified, and the change in the conservation easement does not result in a 6(f) conversion. Accordingly, no Federal involvement in authorizing this project is required....

(Letter from Don Castleberry to Albert Caccese, Ex. C to Complaint). Plaintiffs contend that the National Park Service's failure to provide specific findings in support of its determination that no 6(f) conversion will occur entitles plaintiffs to depose an officer of the Park Service to discover how that determination was reached. However, defendants maintain that review of the Park Service's determination must be limited to the administrative record before the agency at the time Mr. Castleberry's determination was made. Moreover, defendants contend that plaintiffs' broad notice to produce documents seeks an "unfettered inquiry into the mental processes of the decisionmakers in this matter," and requests production of documents which are exempt from disclosure by virtue of the attorney-client privilege and the attorney work product rule.

### III

Any inquiry into the propriety of deposing a member of the National Park Service must begin with an examination of the

---

3. There is apparently no dispute that responsibility for this determination has been committed to the Secretary or his designee. *Cf. Sierra Club v. United States Army Corps of Engineers,* 701 F.2d 1011, 1036–37 (2d Cir.1982) (agencies with responsibility for directing environmental impact statements must determine, in first instance, whether such statements are required).

principles set forth in *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). In *Overton Park,* the Court was concerned with § 4(f) of the Department of Transportation Act of 1966, as amended, and § 18(a) of the Federal-Aid Highway Act of 1968. Those statutes prohibited "the Secretary of Transportation from authorizing the use of federal funds to finance the construction of highways through public parks if a 'feasible and prudent' alternative route exists." *Id.* at 405, 91 S.Ct. at 817. The statutes also provided that construction through a park was permissible only "if there has been 'all possible planning to minimize harm' to the park." *Id.* Plaintiffs in *Overton Park* challenged the Secretary's decision to provide federal funding for the construction of a highway through Overton Park and, since the Secretary's determination was unaccompanied by formal findings, plaintiff sought to depose a former federal highway administrator to determine how the Secretary's decision was reached.

In *Overton Park,* since formal findings by the Secretary were not required by the applicable statutes, the Court remanded the action to the district court for plenary review, and directed "[t]hat review ... be based on the full administrative record that was before the Secretary at the time he made his decision." *Id.* at 420, 91 S.Ct. at 825. However, realizing that "the bare record may not disclose the factors that were considered or the Secretary's construction of the evidence it may be necessary for the District Court to require some explanation in order to determine if the Secretary acted within the scope of his authority and if the Secretary's action was justifiable under the applicable standard." *Id.* Acknowledging that "[t]he court may require the administrative officials who participated in the decision to give testimony explaining their action," the Court cautioned that "such inquiry into the mental processes of administrative decisionmakers is usually to be avoided." *Id.,* citing *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941). The Court also indicated that "where there are administrative findings that were made at the same time as the decision ... there must be a strong showing of bad faith or improper behavior before such inquiry may be made." *Id.; see also National Nutritional Foods Ass'n v. Food and Drug Admin.,* 491 F.2d 1141, 1145 (2d Cir.1974), *cert. denied,* 419 U.S. 874, 95 S.Ct. 135, 42 L.Ed.2d 113. Finally, the Court provided yet another option on remand to the district court:

It may be that the Secretary can prepare formal findings ... that will provide an adequate explanation for his action. Such an explanation will, to some extent, be a "post hoc rationalization" and thus may be viewed critically. If the District Court decides that additional explanation is necessary, that court should consider which method will prove the most expeditious so that full review may be had as soon as possible.

*Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 420–21, 91 S.Ct. at 825–26. *See also Camp v. Pitts,* 411 U.S. 138, 143, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973) (If administrative record is so incomplete as to preclude judicial review, remedy is to require, through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary.); *accord, Environmental Defense Fund, Inc. v. Costle,* 657 F.2d 275 (D.C.Cir. 1981); *Doraiswamy v. Secretary of Labor,* 555 F.2d 832 (D.C.Cir.1976).

As indicated above, an exception to the general rule limiting judicial review of an agency determination to the administrative record is found when agency officials are alleged to have acted in bad faith. *Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 420, 91 S.Ct. at 825. However, bald assertions of bad faith are insufficient to require agency officials to submit to depositions. *Cf. Mobil Oil Corp. v. Lefkowitz,* 454 F.Supp. 59, 71 (S.D.N.Y. 1977) ("[P]laintiffs must allege more than bald conclusions of recklessness before the Attorney General of the State of New York can be subjected to discovery as to his motives in enforcing an arguably constitutional statute."). Indeed, in order to overcome

the presumption of validity in administrative action, *Udall v. Washington, Virginia and Maryland Coach Co.*, 398 F.2d 765 (D.C. Cir.1968), a party seeking to depose an administrative official must show specific facts to indicate that the challenged action was reached because of improper motives.

■ In the case at bar, Mr. Castleberry's letter to Mr. Caccese referred to the documentation upon which he based his determination that no 6(f) conversion would occur if Marriott were allowed to proceed with its proposed construction of a resort facility at Lake Minnewaska. Moreover, the Court has been furnished with the entire administrative record available to Mr. Castleberry at the time he reached his decision. Therefore, this Court concludes that review of the National Park Service's determination that no 6(f) conversion will occur does not require the Park Service to designate some official to submit to depositions as requested by plaintiffs.

■ In support of their present motion, plaintiffs also contend that defendants acted in bad faith in reaching their determination that no 6(f) conversion will occur if Marriott is allowed to proceed with its proposed development. This contention is based upon one statement contained in an undated intra-agency memorandum from Myra Harrison, Acting Director, Office of Review and Compliance, Advisory Council on Historic Preservation to Robert Johnson, Chief, State Programs Division, National Park Service, Mid-Atlantic Region. (Ex. "B" to plaintiffs' Notice of Motion). The memorandum contains the following statement concerning the proposed Marriott acquisition and development: "As you probably know, the matter has been very thick politically." This Court concludes that, without more, Myra Harrison's statement fails to provide the necessary showing of bad faith, *cf. Sierra Club v. Army Corps of Engineers, supra,* at 1044–49, to entitle plaintiffs to the discovery they now seek. Accordingly, Plaintiffs' request to depose an official of the Park Service must be denied.[4]

### IV

For the reasons stated above, plaintiffs' motion pursuant to Fed.R.Civ.P. 37 to compel the National Park Service to designate an individual to submit to a deposition on its behalf is denied. Defendants' motion to limit review to the administrative record and to vacate plaintiffs' notice of deposition and the request for documents contained therein is granted.[5]

It is so Ordered.

---

**4.** Moreover, having concluded that judicial review here must be limited to the administrative record before Mr. Castleberry at the time he made his determination, the alternative means for obtaining additional explanation from an agency provided for in *Overton Park* are not similarly available to plaintiffs.

**5.** Plaintiffs may renew their request for documents and defendants can assert specific claims of privilege as they may apply to any specific documents requested.