In re William Leon TODD and Bonnie Elaine Jenkins Todd, Individually, and William Leon Todd and Bonnie Elaine Jenkins Todd, d/b/a Bruce Equipment Company, Inc., Debtors.

### INTERNATIONAL HARVESTER CREDIT CORPORATION, Plaintiff,

v.

### William Leon TODD and Bonnie Elaine Jenkins Todd, Defendants.

Bankruptcy No. S83–30169.
Adv. No. 84–3071.

United States Bankruptcy Court, N.D. Mississippi.

Nov. 19, 1984.

ing Mr. Guest a security interest which will attach on court approval.

Omar D. Craig, Oxford, Miss., for debtors.

Barry K. Cockrell, Watkins, Ludlum & Stennis, Jackson, Miss., for International Harvester Credit Corp.

## OPINION

DAVID W. HOUSTON, III, Bankruptcy Judge.

This matter is before the Court on the motion for summary judgment filed by Plaintiff, International Harvester Credit Corporation, hereinafter referred to as IHCC; no response having been filed by the Debtors, Leon and Bonnie Todd. IHCC's complaint to determine dischargeability includes four separate counts. In the instant motion, IHCC seeks summary judgment as to Count I, which is based on the Bankruptcy Code's exception to dischargeability under 11 U.S.C. § 523(a)(2)(A).

Summary judgment is appropriately granted when there is no genuine issue to any material fact and the moving party is entitled to a judgment as a matter of law. (Rule 56, F.R.C.P.)

## I.

IHCC commenced a civil action against Bruce Equipment Co., Inc., hereinafter referred to as BEC, in the United States District Court for the Northern District of Mississippi on August 4, 1983. IHCC's claim against BEC, a former International Harvester dealer was based, *inter alia,* on the allegations that certain officers, agents, or employees of BEC had fraudulently assigned a substantial number of false retail contracts to IHCC. A temporary restraining order was obtained by IHCC enjoining BEC from destroying records and compelling BEC to produce its books and records to IHCC for inspection.

Subsequently IHCC amended its complaint to join additional defendants, including the Todds. On December 14, 1983, the Todds filed a petition for relief under Chapter 7 of the Bankruptcy Code. IHCC seeks to prevent the Todds from discharging an indebtedness exceeding $1,000,000.00, owed to IHCC as a result of the alleged fraudulent assignment of the fictitious retail contracts.

## II.

BEC formerly operated as a dealer of agricultural equipment and parts manufactured and/or offered for sale by International Harvester Company. IHCC provided retail financing to BEC and its retail customers. Throughout the period of time in issue, BEC assigned a substantial number of retail contracts to IHCC. Leon Todd was the president of BEC and his wife, Bonnie Todd, was secretary. Todd testified when he was deposed that he was the only person employed by BEC who prepared and submitted retail contracts to IHCC. (Todd's deposition—September 26, 1983)

Prior to the submission of the retail contracts, Todd telephoned the IHCC district office in Memphis, Tennessee, to obtain credit approval at which time he would identify the prospective customer and provide IHCC with credit references applicable to the customer. Once credit approval was

obtained, Todd prepared the retail contract and transmitted it to the Memphis office for processing. Upon receipt of the retail contract, IHCC issued proceeds by check to BEC for the assignment of the contract or, in some instances, by crediting a BEC account. (Todd's deposition—September 26, 1983, pp. 20–25, 41–43)

In August, 1983, IHCC learned that many of the aforesaid retail contracts were not legitimate by conducting interviews with the purported customers. The customers denied purchasing or receiving some or all of the equipment described in the contracts and/or denied signing the retail contracts. Subsequently, IHCC noticed the depositions of the Todds in order to determine who was responsible for the preparation and assignment of the retail contracts. Both of the Todds invoked the Fifth Amendment to the United States Constitution and refused to answer questions related to the retail contracts.

On January 5, 1984, the Todds were deposed at the request of attorneys representing several of the purported customers. At that time, the Todds were questioned with respect to 34 of the 48 retail contracts. Leon Todd testified that 32 of the retail contracts had not been signed by the respective customers, that none of the alleged customers had authorized anyone to sign the retail contracts on their behalf, and that none of the customers received any benefit from the execution of the contracts. Mrs. Todd agreed with and confirmed her husband's responses.

On June 27, 1984, the Todds were deposed in this adversary proceeding. Mr. Todd invoked the Fifth Amendment in response to all questions directly related to the retail contracts in issue.

### III.

Plaintiff, IHCC, has predicated its allegations on 11 U.S.C. § 523(a)(2)(A), the pertinent portion of which reads as follows:

(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—

(2) for obtaining money, property, services, or an extension renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;...

In order to establish the non-dischargeability of a debt under § 523(a)(2)(A), a plaintiff-creditor must prove five elements by clear and convincing evidence: (1) that the debtor made representations to the plaintiff; (2) that at the time the debtor knew the representations were false; (3) that the debtor made the representations with the intention and purpose of deceiving the plaintiff; (4) that the plaintiff relied on the representations; and (5) that the plaintiff sustained damages as the proximate result of the representations having been made. See *In re Singleton*, 37 B.R. 787 (Bkrtcy.D.Nv.—1984); *In re Saunders*, 37 B.R. 766 (Bkrtcy.N.D.Oh.—1984); *In re Hunt*, 30 B.R. 425 (Bkrtcy.M.D.Tn.—1983). These five elements must be applied to the factual situation at hand in order to determine whether the indebtedness resulting from Leon Todd's assignment of the fictitious retail contracts to IHCC is non-dischargeable.

### IV.

(1) *Todd made representations to IHCC.*

Todd represented to IHCC that the retail contracts were legitimate by telephoning IHCC employees and stating to them on each occasion that a certain customer intended to purchase equipment from BEC. He indicated that the customer wanted IHCC to finance the purchase of said equipment. (Affidavits of C.D. Stuart, C.D. Hardy, A.B. Davidson, D.J. Murrary, L.C. Brantley, T.W. Halupnik)

Secondly, Todd represented to IHCC that the retail contracts were authentic by preparing and submitting the completed contracts to IHCC for processing. Todd testified that he was the only person at BEC

who prepared the contracts. (Leon Todd's deposition—September 26, 1983, pp. 22–24)

(2) and (3) *Todd knew the representations were false and made the representations with the intention and purpose of deceiving the plaintiff.*

During the deposition taken on January 5, 1984, Todd acknowledged that 32 of the 48 contracts he was questioned about had not been signed by the customers indicated on the contracts, that none of the customers had authorized their signatures to be placed on the contracts, and that none of the purported customers had received any benefit from the contracts.

In addition, Todd admitted to Thomas P. Waits, the majority stockholder of BEC, that he prepared the fictitious contracts in issue and even explained how he implemented the scheme by using fictitious serial numbers. (Affidavit of Thomas P. Waits)

(4) and (5) *IHCC relied on the representations and suffered a loss as a result thereof.*

IHCC relied on the apparent validity of the retail contracts by processing the contracts as legitimate transactions, and by remitting proceeds to BEC as consideration for the assignments. (Affidavits of C.D. Stuart, C.D. Hardy, A.B. Davidson, D.J. Murrary, L.C. Brantley, T.W. Halupnik)

The unpaid principal balance of $1,078,466.15, due and owing IHCC is itemized in the affidavit of Amos C. Duncan and is undisputed. Thus, there is no question that IHCC has suffered a loss as a result of the false representations made by Todd.

Although the IHCC funds and/or credits were issued to BEC, this Court is compelled to find, following a thorough consideration of all circumstances, that BEC was merely the "alter ego" of Leon Todd. As such, Todd is the responsible party for the indebtedness owed IHCC.

## V.

It is significant for purposes of summary judgment that Todd has not denied the facts which establish his false representations and fraudulent intent. Instead, he has plead the Fifth Amendment to probative questions concerning these matters. It is well established that a person may refuse to testify during civil proceedings on the ground that his testimony might incriminate him. *Lefkowitz v. Turley*, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). However, when a party refuses to testify in response to probative evidence offered against him, it is proper to draw adverse inferences from his exercise of the Fifth Amendment privilege. *Farace v. Independent Fire Insurance Co.*, 699 F.2d 204, 210 (5th Cir.—1983). This Court, as the Court in *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.*, 465 F.Supp. 585, 591 (M.D. La.–1979),"has no choice but to draw the inference from his refusal to testify that he was responsible for the unauthorized acts complained of."

## VI.

Based on the foregoing reasons, this Court is of the opinion that the sum of $1,078,466.15, owing to IHCC by Leon Todd shall not be discharged in this bankruptcy case, and that summary judgment shall be entered in favor of IHCC and against Defendant Leon Todd as to Count I of IHCC's complaint.

An Order will be entered consistent with this Opinion.