## JEFFREY D. RUBENSTEIN *v.* BONNIE M. RUBENSTEIN

Superior Court, Judicial District of New London
File No. FA-96 0537581S

Memorandum filed April 21, 2004

*Michael R. Hasse & Associates*, for the plaintiff.

*Gilbert Shasha* and *Cloutier & Eddy*, for the defendant.

*Lori Hellum*, for the minor child.

*Susan Connolly*, guardian ad litem, for the minor child.

---

*Asselin & Connolly,* for Susan Connolly.

*Gregory P. Carnese,* for Sam Rubenstein et al.

*Peck & O'Brien,* for Richard Rubenstein et al.

*Seifert & Hogan,* for Elaine Dembroff.

## BACKGROUND

DEVINE, J. This matter comes before the court as part of a prolonged legal battle brought between the parties in our state's family, juvenile and criminal trial courts. The defendant mother, Bonnie M. Rubenstein, removed Randy, her minor child, from the state on or about September 6, 1997, in contravention of a pendente lite custody order. On December 5, 1997, the court, *Austin, J.,* entered a judgment dissolving the marriage and awarding custody of the minor child to the plaintiff father, Jeffrey D. Rubenstein. The defendant, who failed to come to court to defend her position concerning the alleged conduct of the plaintiff, was granted no visitation rights. She remained in hiding with the minor child in various parts of the world until July 25, 2002, when she was taken into custody by federal law enforcement personnel in the state of Florida.

The minor child, whose date of birth is November 9, 1993, was returned to Connecticut accompanied by the guardian ad litem and law enforcement personnel in July, 2002. The Superior Court, Juvenile Division, exercised jurisdiction over the minor child pursuant to an order of temporary custody in favor of the department of children and family services issued by *Handy, J.,* on July 26, 2002. The Juvenile Court later granted custody-guardianship to the paternal aunt and uncle, Richard Rubenstein and Jeanne Rubenstein, by order of *Driscoll, J.,* on August 8, 2002. The plaintiff was granted restricted access to the minor child in the juvenile and family courts. The custodial arrangement established by order of the Juvenile Court was necessary due to the

alienation of the minor child from the plaintiff caused by allegations by the defendant that the minor child was sexually abused by the plaintiff.

The minor child is represented by legal counsel and a guardian ad litem both in the juvenile and family courts. The minor child continues in counseling while he visits with the plaintiff pursuant to access orders established in the Juvenile Court proceeding. That access has expanded from daytime to overnight access with the plaintiff.

The defendant presently enjoys visitation with the minor child pursuant to an order entered after a stipulation of the parties filed on September 12, 2003, and approved by this court. That stipulation provides in part: "The defendant mother has visitation twice monthly supervised by Dr. Nancy Randall in accordance with the contract previously executed with Dr. Randall and in accordance with the existing orders. It is anticipated that visits will increase [and be] consistent with the best interest of the child. This order is without prejudice to all parties such that a modification may be sought . . . in the child's best interest."

The defendant seeks to modify this visitation order by a motion dated October 4, 2003. She claims that she has successfully exercised her supervised visitation. She further contends that it is in the best interest of the minor child that her visitation be increased and unsupervised. The guardian ad litem, through her attorney, commenced a deposition of the defendant on November 26, 2003. During the deposition, the defendant exercised her fifth amendment privilege and refused to answer any questions pertaining to the time period from September 9, 1997, through August 13, 2002. After the court denied the defendant's motion to disqualify the guardian ad litem, she filed another notice

of deposition dated December 18, 2003. The defendant, through counsel, pursuant to Practice Book § 13-5, filed a motion for a protective order as amended on December 19, 2003. The defendant, up to and including the hearing held on March 31, 2004, continues to invoke her fifth amendment privilege not to testify as to the five year time period due to potential federal prosecution.[1]

The guardian ad litem, through her counsel, filed a motion requesting the court to enter an order precluding the defendant from pursuing any post judgment motions seeking any relief and offering any testimony, witnesses or exhibits in this matter.[2] The paternal aunt and uncle, through counsel, filed a motion to adopt (post judgment) the guardian ad litem's motion to preclude with supporting memorandum and attachment dated January 19, 2004. The plaintiff, through counsel, also filed a motion to adopt (post judgment) on January 27, 2004. Attorney Lori Hellum, counsel for the minor child, orally moved to adopt the guardian ad litem's motion to preclude at the hearing held on March 31, 2004.

## ISSUE

The issue in the present case is whether the trial court should dismiss, stay or defer action on the defendant's motion to modify visitation based upon her refusal to testify based upon her invocation of the fifth amendment.

---

[1] The guardian ad litem, through counsel, also served a subpoena duces tecum on the defendant's mother, Elaine Dembroff, on January 1, 2004, with a request for production of records at a deposition scheduled on February 5, 2004. At the deposition, Dembroff refused and failed to answer questions posed to her.

[2] The counsel for the defendant raised the claim that the guardian ad litem is without standing to file and prosecute the motion to preclude. The defendant withdrew the claim in light of the adoption of the motion and the accompanying memorandum of law by the plaintiff, the custodians (paternal aunt and uncle) and the attorney for the minor child.

## DISCUSSION

The guardian ad litem, together with counsel for the minor child and the custodians (paternal aunt and uncle), contend that the defendant should be precluded from proceeding on her motion to modify visitation dated October 24, 2003. The defendant, from on or about September 6, 1997, through July 25, 2002, had removed her minor son from the care and custody of the plaintiff, who was entrusted with the minor child through court order. The minor child was removed from the jurisdiction of Connecticut without a hearing based upon the unilateral actions of the defendant.

As a consequence of her actions, the defendant is the only person who has knowledge or information relative to the facts and circumstances regarding the minor child's experiences and development during this substantial period of time. The opposing parties, together with the guardian ad litem, have been prevented from obtaining any information concerning the whereabouts of the minor child, medical treatment, education, psychological condition or treatment, and the like, since the minor child's illegal removal from the custody of the plaintiff and return to Connecticut. The defendant bears the burden to prove that a material change in circumstances has occurred with the best interest of the minor child to be the ultimate test in modifying postjudgment access or visitation. *Walshon* v. *Walshon*, 42 Conn. App. 651, 657, 681 A.2d 376 (1996); *Brubeck* v. *Burns-Brubeck*, 42 Conn. App. 583, 585, 680 A.2d 327 (1996).

The defendant's invocation of her fifth amendment privilege to potential criminal prosecution in the federal or state courts is a right recognized in our federal and/ or state constitution. The fifth amendment privilege against self-incrimination "not only protects the individual against being voluntarily called as a witness against

himself in a criminal prosecution but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz* v. *Turley*, 414 U.S. 70, 77, 94 S. Ct. 316, 38 L. Ed. 2d 274 (1973); *Olin Corp.* v. *Castells*, 180 Conn. 49, 53, 428 A.2d 319 (1980). The opposing parties contend, however, that the fifth amendment privilege cannot be used in a manner that prohibits them from obtaining any information for the five year period concerning the mental and physical health, safety, welfare, and the like, of the minor child who is at the center of the present controversy.[3]

The defendant contends that her right to invoke the fifth amendment should not preclude her ability to prosecute a motion to modify visitation even though she refuses to divulge information for the five year period of her minor child's life. The defendant contends that the issue of preclusion should be left to the trial judge who hears the motion. She claims that the trial judge should be left with the task of determining whether adverse inferences should be drawn upon the refusal of the defendant to answer questions concerning custody or access. She further argues, through counsel, that she would be prejudiced in pursuing her claims to see the minor child on an increased and unsupervised basis if the court were to dismiss her motion or stay prosecution thereof.

The court is left with the task of determining what order, if any, is required in balancing the interests of the parties in the civil case involving the life of a minor child, who is a victim of this dispute.

---

[3] The defendant was charged with custodial interference in the first degree, a class D felony pursuant to General Statutes § 53a-97. She was tried before a state court jury and acquitted on June 27, 2003. She contends that federal authorities continue to investigate a potential federal criminal charge and prosecution.

The present controversy deals with the ability of the guardian ad litem, the counsel for the minor child, the plaintiff and the custodians, to obtain discovery. Practice Book § 13-14, as amended, provides the court with various sanctions for failure to answer interrogatories, produce nonprivileged documents or testify at a deposition. These remedies include, but are not limited to, monetary sanctions, nonsuit or default against the party failing to comply with discovery.

Our Supreme Court has dealt with a party's invocation of the fifth amendment privilege during the course of a deposition in a civil (nonfamily) case in *Pavlinko* v. *Yale-New Haven Hospital*, 192 Conn. 138, 470 A.2d 246 (1984). *Pavlinko* involved an action brought by the administrator of the estate of his wife against various corporate and individual defendants claiming negligence in the care and treatment of the decedent. Following the death of the decedent, the original hospital records belonging to the named defendant were missing from the hospital and not returned to the hospital for a period of two years.

The defendants filed interrogatories answered by the plaintiff administrator, under oath, indicating that he obtained possession and control of the original hospital records by taking them from the hospital. He further stated that he had them in his possession and control from on or about January 12, 1979, to February 6, 1981. On August 13, 1981, the defendants examined him under oath at a deposition where he refused to answer certain questions concerning these documents under the sole claim of the fifth amendment. He did not object to these questions on the basis of materiality, nor at any time did he seek a protective order from the court precluding inquiry into the area covered by these questions.

Following the refusal to answer these questions at the deposition, the defendants moved to dismiss the plaintiff's action with an alternative request that the court order the plaintiff to answer the questions. The plaintiff, acting through counsel, refused to answer the questions prior to the court's action on the motion to dismiss. After reviewing the available options, the trial court dismissed the complaint. In upholding the decision of the trial court, the Supreme Court held: "Of all the sanctions available to the court only dismissal was viable in the circumstances. An order of nonsuit would have been completely ineffectual. Since the plaintiff could have brought a new action within one year of the nonsuit; General Statutes § 52-592 (a); the result would be to postpone the issue to a later date. An award of costs including attorney's fees would have some effect but could hardly be expected to produce the requested information. An order establishing facts or precluding evidence would be inapplicable to the problem at issue here." Id., 144–45.

The plaintiff in *Pavlinko* refused to answer the deposition questions prior to the trial court's dismissal of the case. The plaintiff's actions were intentional in that he chose to invoke his fifth amendment privilege. His action denied to the defendants answers to questions as to the whereabouts and status of the contents of the records purportedly taken by the plaintiff. The Supreme Court further opined: "The privilege against self-incrimination is a constitutional shield against a person being compelled to convict himself out of his own mouth. It may not be used as a sword to deny others information which is rightfully theirs. A plaintiff cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action. *Stockham* v. *Stockham*, 168 So. 2d 320, 321 (Fla. 1964). A plaintiff

who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved in a civil action risks having his complaint dismissed upon timely motion. *Bramble* v. *Kleindienst*, 357 F. Sup. 1028, 1036 (D. Colo. 1973), aff'd sub nom. *Bramble* v. *Richardson*, 498 F.2d 968 (10th Cir. 1974), cert. denied sub nom. *Bramble* v. *Saxbe*, 419 U.S. 1069, 95 S. Ct. 656, 42 L. Ed. 2d 665 (1974); *Kisting* v. *Westchester Fire Ins. Co.*, 290 F. Sup. 141, 149 (W.D. Wis. 1968), aff'd, 416 F.2d 967 (7th Cir. 1969); see *Brown* v. *United States*, 356 U.S. 148, 160, 78 S. Ct. 622, 2 L. Ed. 2d 589, reh. denied, 356 U.S. 948, 78 S. Ct. 776, 2 L. Ed. 2d 822 (1958) (Black, J., dissenting); annot. 4, A.L.R.3d 545." *Pavlinko* v. *Yale-New Haven Hospital*, supra, 192 Conn. 146–47.

The defendant is the proponent of the present motion to modify access with the minor child. She has repeatedly and intentionally refused to answer questions concerning the time period she left Connecticut with the minor child until her extradition and return to Connecticut. The defendant is the only individual known to the parties with the information that is needed to defend her claim for increased and unsupervised visitation.

This court concludes that the minor child should not be subjected to any change in access with the defendant until she answers the questions concerning the minor child's prior whereabouts. His physical, medical and psychological treatment, education, and the like, during the five year period she fled with the minor child, must be examined by the parties and ultimately the court. Only the defendant can answer the questions that the opposing parties (including counsel for the minor child and the guardian ad litem) are entitled to have answered.

The law of sanctions, under Practice Book § 13-15, provides the court with a wide range of available remedies. The present civil dispute does not center around the typical trial court action seeking monetary damages,

resolution of property interests and so forth. The present case involves the growth and development of a young boy who has been moved around the world while his parents wage a war in the criminal and civil courts. The best interest of the minor child requires that the parties (and ultimately the court) have all of the evidence available concerning his prior care and custody.

The overall psychological and physical affects of the five year alienation from the plaintiff and his extended family prior to his return to Connecticut must be disclosed and evaluated prior to any increase in access to the defendant.

The plaintiff, the paternal aunt and uncle, the attorney for the minor child and the guardian ad litem request that the court stay the motion to modify access until the defendant files a notice with the clerk that she no longer intends to exercise her fifth amendment rights. They further request that the court enjoin her from filing any subsequent motion to modify custody or visitation access prior to the filing of the notice. The defendant (as argued and claimed in her memorandum of law dated March 31, 2004) requests that the court defer action on the motion to preclude to the trial judge.

This court, after serious deliberation, concludes that the defendant's request to modify access and any future motion to modify access or custodial rights should only be heard after she answers deposition questions and requests for production and disclosure concerning the five year period in question. The court further concludes that it would be imprudent to defer the decision on the motion to preclude to the judge who hears the motion. The opposing parties and the guardian ad litem could be subjected to a potential strategic change of position. The defendant could waive her fifth amendment privilege at trial. The opposing parties and the guardian ad litem would not have the answers to discovery that they are entitled to prior to trial.

The court also chooses not to issue an order enjoining or barring the defendant's future access to this family court in the filing and prosecuting of any future motion to modify custody or visitation access concerning the minor child.[4] The court assumes that the logic and reasoning of this decision will be adopted by a successor trial judge, barring any exigent or unforeseen circumstances.

## ORDER

The court orders that the defendant's motion to modify visitation access dated October 4, 2003, is hereby stayed until she files with the court clerk a notice of her intention not to invoke any fifth amendment privilege. The trial of the motion shall not be scheduled until all parties have had the opportunity to depose the defendant and have any requests for production and disclosure answered under oath.

[4] The court has the authority and discretion to refuse to entertain or decide motions in order to prevent harassing or vexatious litigation. See *In re Martin-Trigona*, 737 F.2d 1254 (2d Cir. 1984), aff'd on remand, 763 F.2d 140 (2d Cir. 1985), cert. denied, 474 U.S. 1061, 106 S. Ct. 807, 88 L. Ed. 2d 782 (1986), motions denied, 795 F.2d 9 (2d Cir. 1986), modified sub nom. *Martin-Trigona* v. *Cohen*, 876 F.2d 307 (2d Cir. 1989), motions denied sub nom. *In re Martin-Trigona*, 9 F.3d 226 (2d Cir. 1993).