**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3898-15T3

SOUTH JERSEY TRANSPORTATION
AUTHORITY,

    Plaintiff-Respondent,

v.

IFPTE, LOCAL 196, CHAPTER 2,
and JOHN SEGARS,

    Defendants-Appellants.

_____

> Argued October 23, 2017 — Decided November 20, 2017
>
> Before Judges Sabatino, Ostrer and Rose.
>
> On appeal from Superior Court of New Jersey,
> Chancery Division, General Equity, Atlantic
> County, Docket No. C-000015-16.
>
> Leonard C. Schiro argued the cause for
> appellants (Mets Schiro McGovern & Paris, LLP,
> attorneys; Mr. Schiro, of counsel and on the
> briefs; Shawn M. Lopez, on the briefs).
>
> Benjamin S. Teris argued the cause for
> respondent (Brown & Connery, LLP, attorneys;
> Eric D. Milavsky and Mr. Teris, on the
> briefs).

PER CURIAM

In this labor arbitration case, appellants, IFPTE, Local 196, Chapter 2 ("the Union"), and John Segars, seek reversal of the Chancery Division's order dated May 2, 2016. The court's order modified an arbitrator's award concerning Segars, who had been accused of engaging in inappropriate conduct during his employment with respondent, South Jersey Transportation Authority ("SJTA").

The arbitrator concluded the SJTA had proven that Segars had committed some, but not all, of the charged conduct, and suspended him from his employment for forty-five days. After independently examining the evidence in the record, the trial court determined that Segars' conduct was more severe and wrongful than the arbitrator had found. The court also determined that considerations of public policy required the imposition of a much stronger sanction. Consequently, the trial court modified the arbitrator's award and ordered the termination of Segars' employment, as the SJTA had requested.

For the reasons that follow, we reverse the trial court's decision and remand for further proceedings. We do so because the court's analysis — although it has considerable evidentiary support in the record — substantially rests upon findings of specific violations, including drug dealing, which were not charged against Segars and which were not adjudicated before the arbitrator. As such, the trial court's decision strays from the

strict constraints imposed upon judicial review of arbitration awards under the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11.

## I.

Segars was a parking lot attendant employed by the SJTA. He worked at a parking garage in Atlantic City. Segars is a member of the Union.

On June 8, 2015, a patron complained about Segars to the SJTA's Parking Division Manager. The patron reported that three days earlier, on the evening of June 5, 2015, no one was at the booth to validate her ticket. Segars had been on duty that evening.

The Manager instructed the SJTA Parking Supervisor to review the video surveillance footage of the garage from June 5. Inadvertently, the Supervisor retrieved surveillance footage instead from June 12, 2015, a different night on which Segars was on duty.

As described by the trial court, the June 12 footage shows that Segars left his post at the booth that night around 9:40 p.m. to retrieve an item from the garage's secure office. An unidentified young man arrived at the garage to meet with Segars. The man searched the abandoned booth and removed an envelope, presumably one that contained petty cash. Segars returned around

9:59 p.m. to meet with the visitor. Segars then seemed to realize the envelope was missing, confronted the visitor, and made a telephone call. A vehicle then arrived. A person in that vehicle handed what is claimed to be the missing envelope back to Segars.

The video shows that Segars then had several heated exchanges with the visitor who had taken the envelope. A physical altercation ensued. The visitor can be seen on the video grabbing Segars at 10:26 p.m. During another exchange at 11:32 p.m., Segars grabbed the visitor by the arm. Segars later pulled out a long stick from his booth, waving it at the visitor to fend him off.

Having discovered this recorded incident, the SJTA retrieved additional surveillance footage from Segars' shifts for the preceding sixty days, a time frame as far back as such footage is saved. A review of that extra footage revealed at least fifteen similar interactions Segars had with other people. The footage depicts Segars going in and out of the garage's secure office space, often accompanied by as many as fifteen unknown individuals, and exchanges of various envelopes with those persons.

On June 26, 2015, the SJTA brought disciplinary charges against Segars, seeking to terminate him in accordance with the terms of the Collective Negotiations Agreement ("CNA") between the SJTA and the Union. Specifically, the charges accused Segars of the following:

> You are being charged with neglect of duty and unbecoming conduct. These charges are for misconduct that occurred during your shifts in the parking garage on 4/24, 4/25, 5/8, 5/9, 6/5, 6/6, and 6/12. Your misconduct on those dates includes but is not limited to: neglecting your post, repeatedly permitting unauthorized persons to loiter on SJTA property, engaging in non-work-related activity/transactions with such persons, failing to report theft of [SJTA] property, participating in physical altercations on SJTA property, and failing to report those altercations.

An internal disciplinary hearing to address these charges was conducted in August 2015. The hearing officer recommended that Segars be terminated, subject to the approval of the SJTA Board of Commissioners, for "unbecoming conduct and neglect of duty."

On behalf of Segars, the Union then requested the dispute be submitted to arbitration, pursuant to the CNA. Among other things, the Union contended that the sanction of termination was unjust.

The arbitration took place on November 9, 2015. As a preliminary matter, the Union argued to the arbitrator that any conduct of Segars occurring prior to June 5, 2015, could not be considered as grounds for dismissal under Article X of the CNA. Article X, entitled "Disciplinary Action," provides that "[a]ny employee charged with misconduct shall be served a written notice specifying the offense charged within ten (10) working days of its occurrence or within ten (10) working days of the [SJTA] becoming

aware of its occurrence [.]" The Union asserted that the SJTA failed to meet this ten-day notice deadline with respect to the earlier surveillance footage.

The SJTA's Supervisor reviewed the videotapes and discovered Segars' conduct on June 14, 2015. Ten working days before that date of discovery was June 1, 2015. As we have noted, the SJTA did not bring disciplinary charges against Segars until June 26, 2015. The Union argued that the SJTA should have noticed Segars' improper behavior depicted on the surveillance videos sooner, and either corrected the behavior, or imposed progressive discipline upon him over time, rather than seeking his termination.

The arbitrator largely concurred with the Union's position about these timing issues. He directed his attention to the later chronological portion of the surveillance videos, and gave little weight to the earlier footage from April 24 through May 9, 2015.

The arbitrator particularly focused his decision upon the footage from the evening of June 12, 2015. He recognized that the footage showed Segars abandoning the booth, an unknown individual retrieving an envelope from the booth and walking away, and a subsequent interaction between Segars and the unknown individual. Even so, the arbitrator noted no SJTA property was stolen or ever reported missing. He therefore concluded the SJTA failed to establish the most serious charge, theft of SJTA property.

A-3898-15T3

However, the arbitrator was satisfied the SJTA had proven the charges of unbecoming conduct and neglect of duty.

In calibrating the sanction, the arbitrator found it significant that Segars' disciplinary record at work was relatively unblemished.  Consequently, the arbitrator reasoned that principles of progressive discipline, as endorsed within the terms of the CNA, applied here.  The arbitrator therefore ordered that Segars be reinstated, but subject to a forty-five-day suspension.  The arbitrator explained his reasoning as follows:

> As the Authority has failed to carry its burden on the most serious charges of theft of Authority property, the penalty of termination is not warranted.  Article X, Section 1.c notes that "when applicable", "progressive discipline" is to be considered. However, while Mr. Segars discipline record contains nothing more than written warnings and a verbal warning for an incident that occurred six months prior, his actions as noted herein do not warrant a short suspension which is normally the next step in a progression of discipline, meant to alert an employee to change behavior before a more severe penalty is imposed.  Mr. Segars['] failure secure the area around his booth and his failure to secure the booth when not in his direct vision as well as his failure to report the breaking into the booth and altercation on June 12, 2015 call for a more severe penalty short of termination.
>
> The Authority had Just Cause to discipline the grievant for the events noted above, but failing to prove the theft of Authority property, the penalty of termination is excessive.  Mr. Segars is to be reinstated

A-3898-15T3

and made whole after a forty-five day suspension.

On March 7, 2016, the SJTA filed a verified complaint in the Chancery Division seeking to vacate the arbitration award. The SJTA argued the award violated public policy (count one); the arbitrator "so imperfectly executed his powers that a mutual, final and definite award" was not made, N.J.S.A. 2A:24-8(d) (count two); and the arbitrator failed to consider "material and pertinent evidence," N.J.S.A. 2A:24-8(c) (count three). The trial court reviewed the surveillance footage submitted to the arbitrator. After briefing and oral argument, the court issued an oral opinion.

In its opinion, the court concluded the arbitrator's award was contrary to public policy. Although recognizing the "quite limited" scope of judicial review of arbitration awards, the court observed the arbitrator in this case mishandled his assignment.

The court found the surveillance tapes showed conduct that "was so severe of a public employee sitting in a public garage and engaging [in] the activities, illicit activities," to such an extent that the court was "willing to cross the rubicon in terms of overturning an arbitrator's award."

During the course of its bench ruling, the court specifically found the evidence showed that Segars was "selling drugs when he's on the job," and that he was "having a business selling illegal

drugs and dealing with all sorts of . . . disreputable people and walking in and out in the course of the evening." The court criticized the arbitrator because he "ignored all the instances of the drug transactions" depicted on the videos, and he failed to appreciate that, in contrast to the offense of stealing parking receipts, "doing a drug deal in a public garage could end up killing someone."

Accordingly, the court determined it was "against public policy" to only suspend Segars for forty-five days. In fact, the court stated it would not find "any [period of] suspension would be appropriate," given what it characterized as "the level of [Segars'] misconduct while on duty."

The court added that the arbitrator "inappropriately focused on the fact that the [SJTA] did not prove the most serious charge of theft of Authority property." The court "more than disagree[d]" with that finding. Consequently, the court concluded the arbitrator "inappropriately exercised his discretion," and that, "as a public policy matter," the court was obligated to overturn the arbitrator's decision. The court therefore greatly increased the sanction by ordering the termination of Segars.

This appeal followed. Among other things, the Union asserts the trial court improperly concluded from its own independent review of the video evidence that Segars was selling drugs while

on the job, an allegation that his employer never made against him. The Union further contends that the court violated the Arbitration Act by substituting its own judgment and perceptions of the evidence for those of the arbitrator.

The SJTA counters that the trial court had a sound evidential basis for its interpretation of the surveillance videos. The SJTA maintains that the court did not veer from its proper role in reviewing arbitral awards under the statute, and that the court rightly invoked here the "public policy" exception to the general approach of deference. The SJTA further asserts that an adverse inference should be applied against Segars, because he failed to testify at the arbitration and explain his workplace conduct.

## II.

Given New Jersey's "'strong preference for judicial confirmation of arbitration awards,'" New Jersey Turnpike Authority v. Local 196, I.F.P.T.E., 190 N.J. 283, 292 (2007) (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 442 (1996)), the Judiciary "may not substitute its judgment for that of a labor arbitrator and must uphold an arbitral decision so long as the award is 'reasonably debatable.'" Id. at 301

Under the New Jersey Arbitration Act, N.J.S.A. 2A:24-1 to -11, which applies to disputes arising from a collective negotiating

agreement, a court may modify an arbitration award in only the following circumstances:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party;
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.
>
> [N.J.S.A. 2A:24-8.]

In W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum & Plastic Workers of Am., 461 U.S. 757, 766, 103 S. Ct. 2177, 2183, 76 L. Ed. 2d 298, 307 (1983), the United States Supreme Court articulated a "public policy exception" whereby "courts may not enforce collective bargaining agreements that are contrary to 'well defined and dominant' public policy," which the New Jersey Supreme Court adopted in Local 196. Local 196, supra, 190 N.J. at 293 (quoting W.R. Grace, supra, 461 U.S. at 766, 103 S. Ct. at 2183, 76 L. Ed. 2d at 307).

The public policy exception supplies a narrow mechanism through which a court may modify an arbitrator's award, other than by the four statutory criteria enumerated in N.J.S.A. 2A:24-8. Id. at 294 ("Reflecting the narrowness of the public policy exception, that standard for vacation will be met only in 'rare circumstances.'") (citing Tretina Printing, Inc. v. Fitzpatrick & Assocs., Inc., 135 N.J. 349, 360 (1994)).

The Court's opinion in Local 196 concluded with the following instructive observation: "We hold that the public policy exception to the review of labor arbitration awards and . . . heightened judicial scrutiny are triggered only when the arbitrator's award--not the grievant's underlying conduct--violates a clear mandate of public policy embodied in statute, regulation, or legal precedent." Id. at 304 (citing Weiss v. Carpenter 143 N.J. 420 (1996)). The "public policy" to be applied by judges in these rare instances "must be embodied in legislative enactments, administrative regulations, or legal precedents, rather than based on amorphous considerations of the common weal." Id. at 295.

Applying these principles to the present case, we conclude that the trial court erred in its reanalysis and alteration of the arbitrator's award. We reach that conclusion for several compelling reasons.

A-3898-15T3

First, the court improperly went beyond the charges issued by the employer in this case, by finding that Segars was engaged in illegal drug transactions while on the job. No such charge of drug-dealing was set forth in the employer's disciplinary notice it served on Segars pursuant to the CNA. The arbitrator was not asked to decide if Segars had been selling or buying drugs. Because a charge of drug-dealing was outside the designated scope of the arbitration, a decision about Segars' discipline could not rest on that ground. See, e.g., Bound Brook Bd. of Educ. v. Ciripompa, 228 N.J. 4, 17-18 (2017) (analogously deeming it erroneous for an arbitrator to redefine the substance of charges that had been levied against a tenured teacher).[1]

To be sure, we agree with the trial court that the video proof in this record is consistent with a perception that Segars was engaged in drug transactions while on duty. However, it is inappropriate to impute such an accusation into the notice of disciplinary charges that the SJTA chose to issue in this case. The generic reference to "engaging in non-work-related activity/transactions" in the charges did not suffice as proper notice of a claim of illegal narcotics transactions. Moreover, as

---

[1] We note that, at our request, the parties provided helpful supplemental briefs addressing the Court's opinion in Ciripompa, a decision issued after the trial court's ruling and the merits briefs on appeal.

the arbitrator noted, the video footage does not reveal what items were actually in the envelopes.

Second, the trial court erred in rejecting the arbitrator's finding that the most serious charge of theft, or a failure to report a theft, was not proven. The video evidence on the key date of June 12 shows that the envelope that was removed from the garage appears to have been returned to Segars later that evening. No proof was presented of any missing funds. As such, the court is bound by the arbitrator's factual findings. We are mindful that the Supreme Court has similarly cautioned this appellate court to refrain from unduly second-guessing a fact-finder's interpretation of video evidence based on our own independent viewing of those videos. See State v. S.S., 229 N.J. 360, 374 (2017).

Third, in light of the charges against Segars that were actually charged and were actually proven, we are unpersuaded that this case presents the "rare instance" in which an arbitrator's findings should be cast aside on public policy grounds. We certainly agree with the trial court with the general proposition that untoward behavior by an employee who works alone in the night shift at a public parking garage and who handles public funds ought to be punished and deterred.

On the other hand, the arbitrator's determination to impose a punishment short of termination — consistent with the progressive discipline policies agreed upon by the SJTA and the Union in the CNA — is not manifestly against public policy, again bearing in mind that drug dealing was not charged and theft was not proven.

For these reasons, the trial court's decision must be vacated and the matter remanded for further proceedings. The remand should not stop, however, at the trial court level. Because we share the court's misgivings about the relatively short forty-five-day length of the suspension the arbitrator selected as a sanction, we believe it is appropriate in these distinctive circumstances to: (1) uphold the arbitrator's factual findings, but (2) remand the case to the arbitrator to reconsider whether a longer period of suspension would be more consonant with the proven facts and the applicable public policies. See, e.g., Kimba Med. Supply v. Allstate Ins. Co., 431 N.J. Super. 463 (App. Div. 2013), certif. granted, 217 N.J. 286, and certif. dismissed as improvidently granted, 223 N.J. 347 (2017) (noting that, in limited situations, a judicial remand to an arbitrator or dispute professional to give further consideration to a case may be an appropriate course of action under the overall statutory scheme).[2]

---

[2] As a side point, we agree with the arbitrator's rejection of the SJTA's request to impose an adverse inference against Segars for

Vacated and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

choosing to exercise his right to refrain from testifying in his own defense at the hearing.  Such testimony that possibly could have incriminated Segars may well have implicated Fifth Amendment concerns.  See State, Dep't of Law & Public Safety, Div. of Gaming Enforcement v. Merlino, 216 N.J. Super. 579, 587 (App. Div. 1987); see also Lefkowitz v. Turley, 414 U.S. 70, 77, 94 S. Ct. 316, 322, 38 L. Ed. 2d 274 (1973).

A-3898-15T3