**IN THE COURT OF APPEALS OF IOWA**

No. 16-0815
Filed August 17, 2016

**IN THE INTEREST OF I.H. AND O.H.,**
**Minor children,**

**W.H., Father,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

District Associate Judge.

        A father appeals the termination of his parental rights to his two children.

**AFFIRMED.**

        Jami J. Hagemeier of Williams & Hagemeier, P.L.C., Des Moines, for

appellant father.

        Thomas J. Miller, Attorney General, and Janet L. Hoffman, Assistant

Attorney General, for appellee State.

        Nicole Nolan of the Youth Law Center, Des Moines, for minor children.

        Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

A father appeals the termination of his parental rights to his two daughters, asserting the State did not provide him with reasonable reunification services because he was forced to choose between forfeiting his Fifth Amendment right against self-incrimination and participating in therapy with the children. The district court noted the invocation of the father's constitutional right in the criminal matter carried with it consequences in the juvenile arena but found it was in the best interests of the children to terminate the father's parental rights. We agree and affirm.

**I. Background Facts and Procedural History**

I.H., born 2007, is the biological child of this father. O.H., born 2006, was adopted by this father after the termination of the girls' mother's parental rights in 2011. The current case came to the attention of the Iowa Department of Human Services (DHS) in January 2015, when it was reported the father had so physically abused I.H. that the father's own hand was bruised. The photographs in the record reveal bruising all over I.H.'s body, which was the product of multiple beatings by the father. The violence of the abuse was further shown by a dent left in the door of the refrigerator and the wall where I.H. had been punched or thrown. In addition, I.H. had been frequently forced to stay—day and night—padlocked in the basement of the home. While the children were admonished by the father not to tell these family secrets, O.H. and I.H. opened up with great detail as to the physical abuse I.H. suffered and the concurrent mental abuse suffered by both girls.

The children were removed from the home and placed in a protective foster home. They were adjudicated in need of assistance on March 27, 2015, and separate therapy services were initiated for both children. The father was charged with four counts of child endangerment under Iowa Code section 726.6(6) (2015), class "D" felonies, and two counts of neglect or abandonment of a dependent person under Iowa Code section 726.3, class "C" felonies. He adamantly maintained I.H.'s injuries were caused by her own clumsiness or falling out of her bunk bed. A no-contact order was issued in the criminal case on February 6, 2015. In the juvenile proceedings, a no-contact order was issued on March 31, but contained this language: "It is further ORDERED that there shall be exception made for contact with the Department of Human Services and those CINA service providers DHS deems appropriate and provides approval for." The father was offered many services including parenting classes, substance abuse evaluations and treatment, and mental health services. With little progress towards reunification, the State filed a petition to terminate the father's parental rights on September 15. The petition came on for hearing on November 5, November 9-10, January 4, 2016, and February 2, 2016.

On November 23, subsequent to the majority of evidence entered in the termination proceeding, the father pled guilty to one count of child endangerment under Iowa Code section 726.6(6) and one amended count of child endangerment under Iowa Code section 726.6(7). The criminal no-contact order was modified on December 23, allowing the father supervised contact with the children at the discretion of DHS and the children's therapists. Following the close of evidence in the termination proceeding, the district court found clear and

convincing evidence to terminate the father's rights under Iowa Code section 232.116(1)(d)[1] and (i)[2], as well as finding termination was in the children's best interests under section 232.116(2), with no barriers to termination as set forth in section 232.116(3). The father appeals.

## II. Standard of Review

Our review of termination of parental rights proceedings is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). To support terminating parental rights, the State must establish the grounds for termination under Iowa Code section 232.116 by clear and convincing evidence. *In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Our primary consideration is the best interests of the children. *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012). In evaluating the best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the

---

[1] Paragraph (d) provides termination is warranted if,
>   The court finds that both of the following have occurred:
>   (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
>   (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services

[2] Paragraph (i) provides termination is warranted if,
>   The court finds that all of the following have occurred:
>   (1) The child meets the definition of child in need of assistance based on a finding of physical or sexual abuse or neglect as a result of the acts or omissions of one or both parents.
>   (2) There is clear and convincing evidence that the abuse or neglect posed a significant risk to the life of the child or constituted imminent danger to the child.
>   (3) There is clear and convincing evidence that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time.

physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 39 (quoting Iowa Code § 232.116(2)).

## III. Grounds for Termination

The father contests the findings under both Iowa Code section 232.116(1)(d) and (i). In particular, under paragraph (d) he asserts the State failed to prove "the parents were offered or received services to correct the circumstance which led to the adjudication." Under paragraph (i) he asserts the failure to prove "that the offer or receipt of services would not correct the conditions which led to the abuse or neglect of the child within a reasonable period of time." His primary claim applicable to both paragraphs is that he was engaged in the services offered, but the State refused "to modify the no-contact order and refus[ed] to engage in reunification therapy with [the father] and the girls until he made admissions against his Fifth Amendment right against self-incrimination."

The Fifth Amendment of the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. By extension, this privilege also allows a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984) (quoting *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973)); *see also In re E.H. III*, 578 N.W.2d 243, 249 (Iowa 1998). In juvenile court proceedings, the State may not penalize a parent for noncompliance with a court order impinging on the parent's right against self-incrimination. *In re C.H.*, 652 N.W.2d 144, 149 (Iowa 2002). The

State may require parents to otherwise undergo treatment, but it may not specifically require an admission of guilt as part of the treatment. *Id.* However, a person's exercise of a constitutional right may indeed have consequences, such as a person's failure to obtain treatment for the identified problem. *Id.*

We have reviewed the extensive juvenile record in this case and find no court order directing the father to admit his guilt, and thereby incriminate himself, before beginning therapy with the children. Rather, the no-contact order in the criminal case prevailed from its issuance on February 6 until it was modified on December 23. The children's therapists were very cognizant of the order. As I.H.'s therapist testified:

> [T]here was the no-contact order. And I was very respectful of that no-contact order. But I did tell [the father]—because he would call me often after the therapy sessions. And I met with him again in the presence of my colleague, [O.H.'s therapist] in March. I did tell him that he would have to be prepared for the reaction that he would get from his daughter. And it would not be a reaction that he was hoping for.
> Q. Has he ever indicated to you he'd be unwilling to participate in those services until his criminal case was resolved? A. I don't believe [the father] said that to me, no.
> Q. Has anyone articulated that to you? A. I believe that his attorney suggested that, that there was another case as well as this case, yes.
> Q. What was suggested to you? A. Nothing. I think it was just conveying information to me.
> Q. And what was that information is what I'm getting at? A. There was another case. There was a criminal case, and that I didn't really have client-therapist privilege with [the father] so that it would be very difficult for me to ask him to say anything to his daughter that might incriminate him.
> Q. So was this an implication he may plead the Fifth to those questions? A. No, there was no implication. I think I was just being—the facts of the case were being reviewed for me. And I have worked with cases like this before. And as I say, I try to be very respectful of legal matters.
> Q. Respectful of the parent's decision as to— A. Yes. I would not want to do anything to harm [the father].

On cross-examination, the therapist was asked:

> Q. Do you understand that it is a choice that [the father] made not to participate in—not to acknowledge the abuse that he caused to his daughter? A. Absolutely.
>
> . . . .
>
> Q. Are you aware that was an option that he had? A. I don't know all of the legal implications, of course. That is why I referred [the father] at least once back to his attorney. But therapeutically there are always options.

I.H. began therapy on February 24, 2015. In the therapist's March 25, 2015 letter to the court, she wrote:

> [I.H.] responded to the therapist question about why she was residing in a foster home by saying she was no longer with her father who had been mean to her. She described physical assaults by him. She said she did not want to see him and confirmed this, in response to this therapist's question, on March 18. This is understandably painful for [the father], as both therapists met with him to inform him about the girls' statements in therapy about contact.

The April 10 DHS report to the court included these recommendations:

- DHS supports the No-Contact Order and waiting for a therapist recommendation before allowing any contact between the girls and family members/friends.
- That [the father] submits to random drug testing at the discretion of the Department.
- That [the father] participates in the 24 or 36 week Batterer's Education Program.
- That [the father] completes a therapy evaluation and follows through with recommendations

Following the April 21 dispositional hearing, the district court found the father had "unresolved physical and emotional abuse of the children," as well as unresolved alcohol issues. It reminded the father "the timelines in this CINA case will not wait for resolution of his criminal matters."

In spite of his claim to be participating in various therapeutic sessions, including Batterer's Education Classes, the father was arrested on July 24, for "Disorderly Conduct, fighting or violent behavior," in violation of Iowa Code section 723.4(1). The incident occurred outside of a bar with the father appearing to be intoxicated.

After the October 13 CINA review hearing, the court found:

> Regarding the No-Contact Order, the Court finds the criminal No-Contact Order remains in effect. Further, the children do not wish to have contact with Father, and Father has not provided any evidence he has address[ed] the physical and emotional abuse, domestic violence, or alcohol issues that contributed to removal. Father reports he has attended individual therapy but has declined to sign a release for the DHS worker to speak to the therapist regarding issues actually being addressed in therapy. Father's attorney now indicates Father would be willing to sign such a release. Father continues to have unresolved criminal matters pending as a result of the incidents that brought these children to the Court's attention. His criminal trial is set for November 16, 2015, but [he] does not anticipate that matter going to trial at this time.

In the termination order, the district court found:

> [Father] could [have] cho[sen] to plead guilty prior to his first criminal trial date which was May of 2015. Had he done so, he could have freely participated in reunification services offered in the Child in Need of Assistance case. . . .
>     . . . .
>     . . . [Father] was unwilling to acknowledge the overwhelming evidence of his physical abuse of his own child, all in order to protect his own self-interests. While Father has the right against self-incrimination, the decision to invoke this right is not without consequence. Here the consequence was heavy, his children knew the abuse they had suffered, but were essentially called liars by Father . . . .

While the district court acknowledged the father's fundamental right to not incriminate himself, the record lacks any court *order* or DHS *requirement* that he do so. His choice came with consequences. *C.H.*, 652 N.W.2d at 150 (stating,

"a person's exercise of a constitutional right may indeed have consequences. One such consequence may be a person's failure to obtain treatment for his or her problems"). We affirm the district court's findings as to Iowa Code section 232.116(1)(d) and (i).

## IV. Best Interests

Finally the father asserts that even if the district court was correct in finding the State proved the statutory elements in Iowa Code section 232.116(1)(d) and (i), the court should have determined it was not in the children's best interest to terminate his parental rights. *See* Iowa Code § 232.116(2).

I.H.'s therapist testified, "Well, the entire circumstances of the case would appear to me as her therapist to say that reunification cannot happen right now. She is quite clear that her father did this. He has indicated to me he didn't." The therapist further testified that any possible meeting between the children and the father would be a "good-bye" session, as both children were adamant that they not see the father again, or as I.H. declared, at least not before she was eighteen years old. The court found:

> The girls have repeatedly indicated they no longer wish to have contact with Father. Both girls have indicated to their therapists, their attorney and GAL, their DHS worker, and [their] current foster home they do not want to return to Father's custody now or in the future, in fact they fear such an outcome.

When the termination hearing concluded, approximately one year after removal, the children had moved on and were safe and happy in the care of family friends,

who were willing to adopt both children. We agree termination was in the girls' best interests and additional time is not warranted.[3]

Agreeing with the district court the grounds for termination were proven by clear and convincing evidence and termination was in the children's best interests, we affirm.

**AFFIRMED.**

---

[3] While not raised by the father on appeal, neither the district court nor this court find any factors that militated against termination under Iowa Code section 232.116(3).